[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12280

_____

SHEKEARA ADMORE,
individually and on behalf of others
similarly situated,

Plaintiff-Appellant,

*versus*

HOSPICE OF PALM BEACH COUNTY INC.,
d.b.a. Trustbridge Hospice Foundation, Inc.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 9:21-cv-80047-BER

————————————

Before JORDAN, LAGOA, and MARCUS, Circuit Judges.

PER CURIAM:

From 2017 to 2020, Shekeara Admore was employed by Hospice of Palm Beach County, Inc. ("Hospice"). In January 2020, Admore applied for and was granted leave for anxiety under the Family and Medical Leave Act ("FMLA"). In July 2020, Hospice terminated Admore's employment. Admore then sued Hospice under the FMLA. Following a jury trial before a magistrate judge, the jury found that Admore was entitled to FMLA leave -- which she received -- but found that Hospice neither interfered with that leave nor retaliated against Admore for taking the leave. Accordingly, the district court entered judgment for Hospice.

Admore, now proceeding *pro se*, appeals the jury verdict. Primarily, Admore alleges deficiencies in her counsel's performance at trial and errors in the jury instructions. However, ineffectiveness of counsel is not a ground for a new trial in civil matters. Nor do we, after careful review and with the benefit of oral argument, find any error in the jury instructions. Accordingly, we AFFIRM.

I.

Hospice is a provider of end-of-life care for patients. Admore is a registered nurse. In 2017, Admore was hired to work for Hospice as a Float Manager. As a Float Manager, Admore was

required to cover for other managers who were out due to vacation, sickness, or other reasons. In January 2020, Admore applied for, and was granted, FMLA leave due to anxiety. Admore was scheduled to return from FMLA leave on April 27, 2020, after a total of twelve weeks of leave.

On April 24, 2020, Hospice announced that it was requiring all of its Float Managers to return to in-person work, including working in Hospice's inpatient units three days per week. In response, Admore informed Hospice that she would not work in an inpatient setting out of concern for her son, who had a health condition that made him vulnerable to COVID-19. Hospice responded by providing Admore with a modified schedule, which lasted for 60 days, during which time she was permitted to work two days per week from home. Hospice terminated Admore's employment on July 1, 2020, after Admore continued to refuse to work with COVID-positive patients in the inpatient unit.

In August 2020, Admore sued Hospice in the United States District Court for the Southern District of Florida, alleging FMLA interference and retaliation.[1]

After both parties consented to trial before the magistrate judge, the case proceeded to a jury trial. *See* Fed. R. Civ. P. 73(a). The jury returned a verdict finding that Admore was entitled to

---

[1] Admore additionally sued Hospice for alleged violations under the Fair Credit Reporting Act ("FCRA"). The trial court entered a directed verdict for Hospice on the FCRA claims. Admore has not appealed from the trial court's directed verdict and those claims are not at issue in this appeal.

FMLA leave but she did not prove that Hospice interfered with or retaliated against her FMLA leave.  The district court entered final judgment in favor of Hospice on June 10, 2022.

This timely appeal followed on July 8, 2022.  On November 9, 2022, after the notice of appeal was filed but before any briefs were filed in this Court, Admore's counsel withdrew from the case citing "[i]rreconcilable differences."

## II.

This Court reads the briefs of *pro se* litigants liberally.  *United States v. Hung Thien Ly*, 646 F.3d 1307, 1316 (11th Cir. 2011).  However, "[d]espite construction leniency afforded *pro se* litigants, we nevertheless have required them to conform to procedural rules." *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002); *see also Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("[O]nce a *pro se* . . . litigant is in court, [s]he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure.").

"We review jury instructions *de novo* to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party."  *United States v. Grigsby*, 111 F.3d 806, 814 (11th Cir. 1997) (quoting *United States v. Chandler*, 996 F.2d 1073, 1085 (11th Cir. 1993)).  We look to determine whether the jury instructions given by the trial court "create a substantial and ineradicable doubt that the jury has been misled in its deliberations." *Cent. Ala. Fair Hous. Ctr., Inc. v. Lowder Realty Co.*, 236 F.3d 629, 635 (11th Cir. 2000) (quoting *Wood v. Spring Hill Coll.*, 978 F.2d 1214, 1218 (11th Cir. 1992) (quotation marks omitted).  "So long as the 'instructions,

taken together, properly express the law applicable to the case, there is no error even though an isolated clause may be inaccurate, ambiguous, incomplete or otherwise subject to criticism.'" *Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277, 1289 (11th Cir. 2014) (quoting *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 585 (11th Cir. 2013) (per curiam)).

## A.

Admore's primary claim on appeal is that her trial attorney breached the fiduciary duties of loyalty and failed to provide competent representation. More specifically, Admore says that her trial counsel agreed to a settlement she did not authorize, failed to oppose Hospice's motions in limine, made inefficient use of time during trial prep, stipulated to facts that Admore claims limited her ability to plead her case, failed to object to various statements during the trial, and failed to communicate with Admore. Admore argues that she is therefore entitled to a new trial.

Even if Admore's grievances are legitimate -- which this Court does not weigh in on -- the law is crystal clear that she has no constitutional right to the effective assistance of counsel in a civil case. *See Mekdeci v. Merrell Nat'l Lab'ys*, 711 F.2d 1510, 1522 (11th Cir. 1983). For that reason, Admore "does not have any right to a new trial in a civil suit because of inadequate counsel." *Id.* at 1523 (quoting *Watson v. Moss*, 619 F.2d 775, 776 (8th Cir. 1980) (per curiam)). Admore's only remedy for ineffective counsel is a suit against her attorney for malpractice. *Id.*

6                    Opinion of the Court                    22-12280

Admore cites to a Ninth Circuit case, *Anheuser-Busch, Inc. v. Natural Beverage Distributors.*, 69 F.3d 337 (9th Cir. 1995), to support the proposition that "[a] new trial is warranted on the ground of attorney misconduct during the trial where the 'flavor of misconduct . . . sufficiently permeate[s] an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict.'" *Id.* at 346 (quoting *Kehr v. Smith Barney, Harris Upham & Co.*, 736 F.2d 1283, 1286 (9th Cir. 1984)). Notably, however, the Ninth Circuit was discussing misconduct by the opposing party's attorneys who were trying to inflame the jury, not ineffectiveness by the moving party's attorney.[2] *See id.* at 342. Moreover, the law of this Circuit is altogether consistent with the Ninth Circuit's law in this regard. *See, e.g.*, *Vineyard v. Cnty. of Murray.*, 990 F.2d 1207, 1213 (11th Cir. 1993) (per curiam) (holding that mistrial in a civil matter is granted only when opposing attorney's "remarks were such as to impair gravely the calm and dispassionate consideration of the case by the jury" (quotation marks removed)).

In this case, however, Admore makes no claim of misconduct on the part of Hospice's counsel attempting to inflame the

---

[2]    Admore also cites a number of Florida District Court of Appeals cases, *see, e.g.*, *Fravel v. Haughey*, 727 So. 2d 1033 (Fla. 5th DCA 1999), as well as two cases from the Supreme Court of the Territory of Guam, *Adams v. Duenas*, 1998 Guam 15 (Guam Sept. 4, 1998), and *HRC Guam Co. v. Bayview II L.L.C.*, 2017 Guam 25 (Guam Dec. 29, 2017). None of these cases are binding on our Court. In any event, none involve ineffectiveness of counsel by the moving party's attorney.

jury, but only to misconduct by her own attorney amounting to negligence and breach of duty. The cases Admore cites regarding attorney misconduct are inapplicable, and the longstanding rule that there is no appellate relief available for ineffectiveness of one's own attorneys in a civil matter applies in this case. *See Mekdeci*, 711 F.2d at 1522–23.

The long and short of it is that Admore is not entitled to a new civil trial because of the claimed ineffectiveness of her trial counsel.

B.

Admore also argues that the trial court improperly denied her proposed jury instructions as to FMLA entitlement as untimely. We are unpersuaded by this claim.

After the close of evidence, but prior to receiving the court's instructions, Admore's counsel proposed an additional jury instruction related to her entitlement to FMLA leave clarifying that "a serious health condition involving continuing treatment" can include chronic conditions under 29 C.F.R. 825.115(c). Admore's counsel said that he had not proposed this instruction earlier because he had not anticipated that the court would instruct the jury on the issue of entitlement. The court denied the request as untimely, citing Rule 51. *See* Fed. R. Civ. P. 51(a)(2) (permitting requests for jury instructions after the close of evidence only "with the court's permission" or for "instructions on issues that could not reasonably have been anticipated by an earlier time that the court set for requests"). The trial court noted that "[i]t was clearly framed in the

pretrial stipulation that entitlement was going to be at issue." Admore does not dispute that the proposed instruction was untimely, but instead argues that the proposed instruction was untimely due to the actions of her counsel, not herself. As we have already explained, ineffectiveness of counsel in a civil case is not a ground for appellate relief. *See Mekdeci*, 711 F.2d at 1522–23.[3] The trial court acted well within its discretion in denying the requested instruction as being untimely.

It's also worth observing, however, that even if Admore's proposed jury instructions had been timely submitted, she was not entitled to the wording of her choice so long as the instruction given by the trial court was accurate, which it was. *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir. 1999) (noting that trial judge has "wide discretion as to the style and wording" of jury instructions (quoting *Carter v. DecisionOne Corp.*, 122 F.3d 997, 1005 (11th Cir. 1997))). The trial court gave an instruction on FMLA entitlement that included the Eleventh Circuit pattern jury instruction in full, except that it omitted the possibility that a

---

[3]     Admore cites to a number of Florida state court cases for the principle that a party should not be punished for the neglect of her attorney when other sanctions for attorney misconduct are available. Setting aside the fact that these cases are not binding on our Court, these cases addressed instances where the state court dismissed a case or an appeal entirely -- the "ultimate sanction in the adversarial system" -- because of the attorney's failure to timely file. *Kozel v. Ostendorf*, 629 So. 2d 817, 818 (Fla. 1993); *see also, e.g.*, *Lindsey v. King*, 894 So. 2d 1058, 1061 (Fla. 1st DCA 2005); *Williams v. Udell*, 690 So. 2d 732, 733 (Fla. 4th DCA 1997). Admore has faced no such prejudice from the untimely filing in this case (or any prejudice at all, as we explain *infra*).

22-12280                Opinion of the Court                9

"serious health condition" could involve inpatient care in a hospital, hospice, or residential medical facility. [4] There was no evidence in

---

[4]    In full, the trial court gave the jury the following instruction defining "serious health conditions" as they may relate to entitlement to FMLA leave:

> A serious health condition as we use it in this law is an illness, injury, impairment, or physical or mental condition that involves continuing treatment by a health care provider. So that's another term I have to define for you, continuing treatment by a health care provider.

> Continuing treatment means a period of incapacity of more than three consecutive full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves either treatment two or more times within 30 days of the first day of incapacity by a health care provider, by a nurse under direct supervision of the health care provider, or by a provider of health care services, such as a physical therapist, under orders of or on referral by a health care provider. So you can either show two or more treatments within 30 days of the beginning of the incapacity, or treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of a health care provider. So there can be one occasion of actual treatment followed by a regimen of continuing treatment.

> Now, a regimen of continuing treatment includes, for example, a course of prescription medication, such as an antibiotic, or therapy requiring special equipment to resolve or alleviate a health condition, perhaps oxygen. A regimen of continuing treatment that includes the taking of over-the-counter medications, such as aspirin, antihistamines, or salves, or bedrest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider is not by itself sufficient to constitute a regimen of continuing

10                Opinion of the Court                22-12280

this case or even any argument that Admore would have qualified under that prong. Additionally, the trial court elaborated on the Eleventh Circuit pattern jury instructions by defining "continuing treatment," since the term is undefined in the statute. *See* 29 U.S.C. § 2611(11)(b). In order to define the term, the trial court drew on language found in 29 C.F.R. §§ 825.113(c) and 825.115(a), which define "continuing treatment." The trial court did not err. We have held that the FMLA regulations are binding when filling out the definitions of the FMLA statute in jury instructions. *Russell v. N. Broward Hosp.*, 346 F.3d 1335, 1342, 1344-45 (11th Cir. 2003). The language used by the district court "properly express[ed] the law applicable to the case," and "there is no error" despite Admore's preferred instruction having been denied. *See Bhogaita*, 765 F.3d at 1289.

In any event, this Court will only reverse a jury verdict for an error of law in the jury instructions if the moving party was prejudiced by that error. *See Fid. Interior Const., Inc. v. Se. Carpenters Reg'l Council of United Bhd. Of Carpenters & Joiners of Am.*, 675 F.3d 1250, 1259 (11th Cir. 2012). Here, Admore can show no prejudice

---

treatment for purposes of FMLA leave. . . . Ordinarily, unless complications arise, the common cold, the flu, earaches, upset stomach, minor ulcers, headaches, other than migraines, routine dental or orthodontia procedures, periodontal disease, and other similar conditions do not meet the definition of a serious health condition and do not qualify for FMLA leave.

because the jury found in her favor on the issue of entitlement anyway.

There was no error in the jury instructions as to the issue of entitlement and, even if there were, there was no prejudice to Admore.

## C.

Finally, Admore argues that the trial court erred by issuing jury instructions inconsistent with the definition of "interference" as the term is used in the FMLA. However, Admore did not object to the trial court's definition of interference at any time prior to appeal. Where a party fails to object to jury instructions, Federal Rule of Civil Procedure 51(d)(2) only provides for plain-error review if "(1) an error occurred; (2) the error was plain; (3) the error affected substantial rights; and (4) failure to correct the error would 'seriously affect the fairness of the judicial proceeding.'" *Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 975 (11th Cir. 2016) (quoting *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir. 1999)). This means that we will reverse the jury's verdict only if the error is "so fundamental as to result in a miscarriage of justice." *Iervolino v. Delta Air Lines, Inc.*, 796 F.2d 1408, 1414 (11th Cir. 1986) (internal quotation marks omitted). Here, the trial court's jury instructions were not in error, much less in plain error.

The trial court gave the following instruction as to the meaning of "interference":

> For the fourth element you must determine whether the hospice interfered with Ms. Admore's FMLA

> rights.  That element is satisfied if Ms. Admore has proven by a preponderance of the evidence that either she requested intermittent leave but hospice forced her to take continuous leave and/or hospice failed to restore her to an equivalent job position to that which she had prior to taking leave.
>
> An equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits, and working conditions, including privileges, prerequisites, and status.  It must involve the same or similar -- I'm sorry, the same or substantially similar duties and responsibilities which must entail substantially equivalent skill, effort, responsibility, and authority.

The Eleventh Circuit's Pattern Instructions simply say, "For the fourth element, you must determine whether [name of defendant] [describe interference]."  Pattern Civ. Jury Instr. 11th Cir. 4.16 at 3 (2022).  The trial court's instructions accurately tracked and elaborated on the pattern instructions.

Admore suggests that interference could include failing to place her in a similar circumstance upon return.  However, the trial court's jury instruction not only correctly included this theory of liability, but used the exact same language that Admore requests.

22-12280                    Opinion of the Court                         13

There was no error in the trial court's jury instructions as to FMLA interference, much less plain error.[5]

---

[5]    Although we read briefs filed by *pro se* litigants liberally, our law requires that we do not address arguments that have been abandoned. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam). An argument is abandoned when it is made in only "passing references," is raised in a "perfunctory manner without supporting arguments and authority," is "embedded under different topical headings," or is referenced only in the "statement of the case" or "summary of the argument." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). Admore's remaining references to the trial court's alleged misstatements, "irregularities," and evidentiary rulings were referenced only in a passing or perfunctory manner, without developing a legal argument, or were mentioned only in the statement of the case and summary of the argument. Therefore, this Court cannot address them.

Additionally, to the extent that Admore argues that Hospice "failed to provide intermittent leave as requested by Appellant which interfered with the employee's exercise of her right to take intermittent leave," or that "Appellee failed to place appellant in a similar circumstance upon return," these are factual issues that have already been settled by a jury.

In any event, the trial court's evidentiary rulings excluding evidence related to Admore's deceased son and the 2019 incident involving threats from a coworker as irrelevant and unduly prejudicial were not, at least, in plain error. Nor did the trial court commit plain error when it excluded evidence regarding emotional distress or other non-pecuniary damages because Admore was not entitled to such damages under the FMLA as a matter of law. *See* 29 U.S.C. § 2617(a)(1)(A); *see also Harley v. Health Ctr. of Coconut Creek, Inc.*, 518 F. Supp. 2d 1364, 1370–71 (S.D. Fla. 2007). The trial court also did not plainly error in admitting Admore's unobjected-to out of court statements offered by another witness because they were relevant statements of a party opponent offered against that party. *See* Fed. R. Evid. 801(d)(2). Finally, the exhibit board listing lawsuits that Admore had allegedly been involved with in the past was not shown to the jury, neither the board nor the document it related to were ever admitted into evidence, and the trial court subsequently

14                    Opinion of the Court                    22-12280

The judgment of the district court is

**AFFIRMED.**

---

(and repeatedly) instructed the jury to only consider the testimony of witnesses and the admitted exhibits as evidence.