[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 20, 2011
JOHN LEY
CLERK

_____

No. 09-12515

_____

D. C. Docket No. 07-00286-CR-WTM-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HUNG THIEN LY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(July 20, 2011)

Before TJOFLAT, WILSON and SEYMOUR,[*] Circuit Judges.

TJOFLAT, Circuit Judge:

_____

[*] Honorable Stephanie K. Seymour, United States Circuit Judge for the Tenth Circuit, sitting by designation.

In this case, we must confront a district court's duties to a pro se criminal defendant. After the defendant, Hung Thien Ly, attempted to question witnesses in presenting his defense at trial, the district court inquired whether Ly wished to take the stand and testify on his behalf. During the ensuing colloquy, Ly exposed a misunderstanding of his right to testify. He believed that he could testify on direct examination only if he was being questioned by an attorney; he was clearly ignorant of his ability to provide narrative testimony. Throughout this court-initiated colloquy, the district court did not correct Ly's misunderstanding. Rather, it merely informed him that he had an "absolute right to testify." Ly chose not to take the stand and the jury found him guilty as charged.

Ly argues on appeal that the district court effectively denied him his right to testify. We agree. In these circumstances, particularly where the district court initiates a colloquy with the defendant regarding his right to testify, the district court is duty-bound to correct a pro se defendant's obvious misunderstanding of his right to testify. Because this error was not harmless, Ly's convictions cannot stand.

I.

Ly is a medical doctor licensed in the State of Georgia to practice medicine and dispense controlled substances to patients. In September 2007, a Southern

2

District of Georgia grand jury indicted Ly on 129 counts of unlawfully dispensing certain controlled substances by means of written prescriptions made "outside the usual course of professional practice and without legitimate medical purpose," in violation of 21 U.S.C. § 841(a)(1)[1] and 21 C.F.R. § 1306.04.[2] The conduct alleged in the indictment spanned from April 2004 to September 2005 and involved

---

[1] 21 U.S.C. § 841(a)(1) reads, in pertinent part: "(a) Unlawful acts. Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ."

[2] 21 C.F.R. § 1306.04 reads:

Purpose of issue of prescription.
(a) A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the [Controlled Substances] Act (21 U.S.C. [§] 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.
(b) A prescription may not be issued in order for an individual practitioner to obtain controlled substances for supplying the individual practitioner for the purpose of general dispensing to patients.
(c) A prescription may not be issued for "detoxification treatment" or "maintenance treatment," unless the prescription is for a Schedule III, IV, or V narcotic drug approved by the Food and Drug Administration specifically for use in maintenance or detoxification treatment and the practitioner is in compliance with requirements in § 1301.28 of this chapter.

controlled substances falling under schedules II, III, and IV of 21 U.S.C. § 812.[3]

At his initial appearance before the magistrate judge on October 3, 2007, Ly claimed that he was indigent and made an oral request for appointed counsel under 18 U.S.C. § 3006A. The Government opposed the motion, arguing that Ly had placed all his assets in his wife's name and that Ly's professed indigence was spurious. Following an investigation by the district court's Probation Office, the magistrate judge entered an order on October 22, 2007, denying Ly's request for appointed counsel because Ly had "systematically transferred his assets to his wife . . . [to] obtain appointed counsel at public expense."

Ly appeared before the magistrate judge for arraignment on November 6, 2007. At that appearance, Ly objected to the magistrate judge's October 22 order denying his request for appointed counsel. Ly explained that, if the district court affirmed the order, he could not afford an attorney and therefore would defend the charges pro se, notwithstanding that he lacked legal training or that his criminal trial would be the first time he witnessed a trial. The magistrate judge postponed the arraignment until after the district court ruled on Ly's motion for appointment of counsel. The magistrate judge then engaged in a colloquy with Ly to inform

_____

[3] The indictment also sought, under 21 U.S.C. § 853, forfeiture of any proceeds of the alleged violations and any real and personal property used to commit or facilitate the violations. The indictment specified $185,080 in U.S. currency as forfeitable property.

4

him of the dangers inherent in representing himself at trial. Among these warnings, the magistrate judge told Ly that a lawyer's advice would benefit Ly's decision "whether [he] should take the stand and testify" at trial; and that the trial judge could not "serve as [Ly's] lawyer" and "could not come to [his] aid" "if it saw that [he was] making what the [judge] believed to be critical errors."

On November 16, 2007, the district court affirmed the magistrate judge's order regarding Ly's ability to afford an attorney, and remanded the case to the magistrate judge for arraignment and to permit the magistrate judge to re-inform Ly of the dangers of proceeding pro se. The arraignment took place on December 4, 2007. Ly refused to enter a plea, either orally or in writing, so the magistrate judge directed the clerk to enter a plea of not guilty to all charges. Before doing so, the magistrate judge again warned Ly of the dangers of representing himself in court, and that the trial judge would not "tell [him] how to try the case, or even advise [him] as to how [he] should do so."

Ly's case proceeded to trial. The Government's case in chief against Ly consisted of, among other things: (1) expert testimony about the regulation of controlled substances; (2) expert testimony regarding standard prescription practices and how Ly's actions deviated from those standard practices; (3) testimony from eleven of Ly's patients explaining Ly's prescription practices;

5

(4) testimony from four retail pharmacists who became suspicious of Ly's practices and therefore stopped filling prescriptions written by Ly; (5) evidence that pharmaceutical companies sold large quantities of controlled substances to Ly and that one company stopped selling to Ly because of these purchases; and (6) the results of a lawful search of Ly's house and office.

After the Government rested, Ly chose to put on a defense. He called some of his patients to show that his normal prescription practices were benign. The district court barred their testimony, however, as improper evidence of prior good acts under Federal Rule of Evidence 404(b). The court explained to Ly that such evidence was inappropriate, but that Ly could testify as to "what kind of practice [he] h[ad] and how [he] handle[d his] patients" and could call witnesses to testify about the Government's witnesses' reputation for truthfulness. Ly then called two witnesses in the hope of impeaching the credibility of the patients who had testified against him. The two witnesses, however, did not know the reputations of those patients. After this unsuccessful attempt at direct examination, Ly informed the district court that he had no other witnesses to call.

The court then called a side-bar conference and asked Ly if he intended to testify. The transcript of this colloquy reveals that Ly was unaware that he could testify in narrative form—that he did not need a third party, i.e., an attorney, to ask

6

him questions—and that the district court did nothing to correct Ly's

misunderstanding.  The colloquy reads:

> THE COURT: All right, Dr. Ly, I've heard you say that you have no more witnesses.  Do you intend to testify in this case?
>
> DR. LY: No, Your Honor.
>
> THE COURT: Now, do you understand that you have an absolute right to testify in your own behalf?
>
> DR. LY: Yeah, I know, but without counsel, Your Honor, I can't testify.
>
> THE COURT: So it is your personal decision not to testify in this case?
>
> DR. LY: Because I don't have counsel who can ask me questions.
>
> THE COURT: Is it your personal decision not to testify in this case?
>
> DR. LY: What do you mean, Your Honor?
>
> THE COURT: Well, I've told you you have a right to testify.  Is it your personal decision not to testify in this case?
>
> DR. LY: No.  I decide not to testify because I don't have counsel to ask me questions.  I cannot just be cross-examined without my counsel to ask—my own counsel to ask me questions.
>
> THE COURT: So you choose not to testify, then?
>
> DR. LY: If I don't have my own counsel –
>
> THE COURT: – Well, you know you don't have counsel, Dr. Ly.  That's not the question.  You've not had counsel since this trial started.  Now, this is your opportunity to testify or not testify, and I

7

want you to tell me on the record whether you intend to testify or not testify.

DR. LY: That decision I can't make—I can't make it in the split of a second, Your Honor. Could you give me . . .

THE COURT: Well, I'm assuming, then, and I'm taking that as a decision by you not to testify in your own behalf in this case.

DR. LY: I wouldn't agree with that.

THE COURT: Well, we've got a jury sitting in the box, and it is your time to testify. And so you're going to have to make that decision, and you've had months leading up to this trial to make that decision. Now, I'm not going to keep everybody waiting. I'm not going to keep the jury waiting, so you make a decision right now whether you're going to testify or not testify.

DR. LY: I'm not going to testify.

Ly did not testify, and the defense rested. The jury convicted Ly on all 129 counts. The district court sentenced Ly to concurrent terms of imprisonment totaling ninety-seven months and fined him $200,000.

Ly appealed his conviction and argues that the district court denied him his right to testify by failing to correct his misunderstanding regarding the availability of narrative testimony.[4] We have jurisdiction, 28 U.S.C. § 1291, and we review his

---

[4] Ly also raised three other issues on appeal: two pertain to the district court's conclusion that he was ineligible for appointed counsel and the third challenges the Government's allegedly inflammatory statements during closing arguments. Because Ly's right-to-testify claim requires us to vacate his convictions, we do not address his other points.

8

claim de novo,[5] United States v. Van De Walker, 141 F.3d 1451, 1452 (11th Cir. 1998).

## II.

We begin with two critical observations that will drive our subsequent analysis. First, Ly's statements clearly indicate that he did not understand the nature of his right to testify, and that the district court—having heard Ly's responses—must have known this. Second, the district court did nothing to correct Ly's misunderstanding and its silence likely reinforced Ly's mistaken view.

The colloquy excerpted in part I, supra, shows that Ly misunderstood the nature of his right to testify—he did not know that he could testify in narrative form. When the court asked Ly if he had decided not to testify, Ly responded, "Because I don't have counsel who can ask me questions." This belief led him to conclude that, were he to take the stand, his only testimony would come from the

---

[5] The Government contends that plain-error review must apply because Ly never objected to the district court's alleged denial of his right to testify. In the context of Ly's claim, this argument is absurd. Ly's argument on appeal is that his confusion regarding his right to testify was so apparent during the court-initiated colloquy that the district court was obligated to correct his misunderstanding. By definition, Ly could not have objected to the district court's actions, for his claim lies in his ignorance of the law. Furthermore, Ly's statements brought his ignorance to the district court's attention such that the court was on notice of its obligations. Under these circumstances, the policies behind the plain-error rule's contemporaneous-objection requirement are not implicated. See Puckett v. United States, ___ U.S. ____, 129 S. Ct. 1423, 1428, 173 L. Ed. 2d 266 (2009) (explaining that the contemporaneous-objection rule is necessary to "give[] the district court the opportunity to consider and resolve" issues in the first instance, and to "prevent[] a litigant from 'sandbagging' the court" by remaining silent).

Government's cross-examination. Ly made this clear when he told the court, "I decide not to testify because I don't have counsel to ask me questions. I cannot just be cross-examined without my counsel to ask—my own counsel to ask me questions."

Ly's understanding was, of course, incorrect. A pro se criminal defendant may testify in narrative form; he does not require an attorney's assistance. See, e.g., United States v. Moody, 977 F.2d 1425, 1430 (11th Cir. 1992). But this erroneous understanding was entirely reasonable from Ly's perspective. With no legal training and no courtroom experience, Ly certainly could have believed that direct testimony requires a question-and-answer dialogue between an attorney and a witness. Without the ability to elicit direct testimony, Ly would indeed be foolish to submit to cross-examination.

Notwithstanding the obviousness of Ly's confusion, the district court did nothing to rectify it. Each time Ly intimated that he could not testify absent "counsel to ask [him] questions," the district court responded cryptically. For example, when Ly stated, "without counsel . . . I can't testify," the district court simply responded, "So it is your personal decision not to testify in this case?" Such responses not only ignored Ly's confusion, it likely reinforced Ly's mistaken belief. With these two observations in place, we proceed to our legal analysis.

10

III.

A criminal defendant has a fundamental right to testify in his defense. Rock v. Arkansas, 483 U.S. 44, 52, 107 S. Ct. 2704, 2709, 97 L. Ed. 2d 37 (1987).[6] Although often framed as a right to testify, it is more properly framed as a right to choose whether to testify. United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc). The "choice" concept reflects the competing considerations that make up this right; while the Fifth Amendment gives the accused the right to remain silent, courts have recognized that the accused also has the absolute right to break his silence and to testify. Rock, 483 U.S. at 52, 107 S. Ct. at 2709. This right to choose is personal as well as fundamental, and the defendant must make this decision himself. Teague, 953 F.2d at 1532.

Like other fundamental trial rights, the right to testify is truly protected only when the defendant makes his decision knowingly and intelligently. United States v. Leggett, 162 F.3d 237, 246 (3d Cir. 1998) ("If a defendant does waive this right [to testify], the waiver must be knowing, voluntary and intelligent."); see also Teague, 953 F.2d at 1533 ("[Advice of counsel] is crucial because there can be no

---

[6] The Supreme Court grounded this right in several provisions of the Constitution: (1) the Due Process Clause; (2) the Sixth Amendment's Compulsory Process Clause; (3) the Sixth Amendment's right to self-representation; and (4) as the "corollary to the Fifth Amendment's guarantee against compelled testimony." Rock v. Arkansas, 483 U.S. 44, 51–53, 107 S. Ct. 2704, 2708–10, 97 L. Ed. 2d 37 (1987).

11

effective waiver of a fundamental constitutional right unless there is an 'intentional relinquishment or abandonment of a known right or privilege.'" (emphasis in original) (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461 (1938))).  In cases where a defendant is represented by counsel, counsel is responsible for providing the advice needed to render the defendant's decision of whether to testify knowing and intelligent.  Teague, 953 F.2d at 1533.  Although it is the defendant—and not counsel—who ultimately retains the right to make this choice, the district court does not normally engage in a colloquy with the defendant to ensure that the decision was made knowingly and intelligently.  United States v. Van De Walker, 141 F.3d 1451, 1452 (11th Cir. 1998).  Indeed, such a colloquy would improperly disturb the attorney-client relationship, id.; Teague, 953 F.2d at 1533 n.8, and would suggest that the district court believed the defendant's choice improvident, United States v. Joelson, 7 F.3d 174, 178 (9th Cir. 1993); Teague, 953 F.2d at 1533 n.8.  Rather, a defendant represented at trial may vindicate his right to make a knowing and intelligent decision whether to testify through a claim of ineffective assistance of counsel.  Teague, 953 F.2d at 1534.

Here, however, Ly was not assisted by counsel.  He decided to defend himself, which was his right.  Faretta v. California, 422 U.S. 806, 818–21, 95 S. Ct. 2525, 2532–34, 45 L. Ed. 2d 562 (1975).  By exercising that right, Ly forwent the

12

benefit of an attorney who would have provided him information necessary to make a knowing and intelligent decision as to whether he should testify. See Teague, 953 F.2d at 1533 ("Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify . . . .").

Ly thus faces a conundrum: a right possibly without a remedy. The Constitution requires that Ly be able to decide whether to testify "knowingly and intelligently," but Ly decided to represent himself, thereby forgoing a remedy under the ineffective-assistance-of-counsel paradigm. Faretta, 422 U.S. at 834 n.46, 95 S. Ct. at 2541 n.46. Ly's remedy—if one exists—is a question of first impression for this court. The Government and Ly propose equally unacceptable options, and our preferred solution lies between their extreme preferences.

A.

Ly's preferred solution would require a district court to obtain a knowing and intelligent waiver of a defendant's right to testify. This argument acknowledges that the right to testify is fundamental. Other fundamental rights, such as the right to counsel and the right to a jury trial, require courts to obtain knowing, on-the-record waivers of the right—i.e., when a defendant decides to defend himself pro se or plead guilty, respectively. See Joelson, 7 F.3d at 178 (collecting cases). Combining these two observations, Ly contends that a district

13

court must obtain a similar on-the-record waiver from a pro se defendant to ensure that he has made the decision whether to testify "knowingly and intelligently."

We cannot accept Ly's solution. The right to testify is not amenable to this sort of colloquy or to the "waiver" paradigm Ly proposes. First, unlike the right to counsel and the right to a jury trial, there is no constitutional default protecting the right to testify. In the right-to-counsel and guilty-plea contexts, the district court must satisfy itself that the defendant has waived his right knowingly and intelligently, Boykin v. Alabama, 395 U.S. 238, 242–43, 89 S. Ct. 1709, 1712, 23 L. Ed. 2d 274 (1969) (regarding guilty pleas); Carnley v. Cochran, 369 U.S. 506, 515–16, 82 S. Ct. 884, 890, 8 L. Ed. 2d 70 (1962) (regarding waving the assistance of counsel), and if the court is not so satisfied, it forces upon the defendant the constitutional default. In the case of the right to counsel, the default is an appointed attorney, and in the case of a jury trial, the default is a plea of not guilty, followed by a jury trial. See United States v. Gomez-Gomez, 822 F.2d 1008, 1010–11 (11th Cir. 1987) (affirming the district court's decision to reject the defendants' guilty plea because the defendants maintained their innocence, thereby shaking the plea's factual basis and the assurance that the plea was "voluntary and intelligent"); Brown v. Wainwright, 665 F.2d 607, 610 (Former 5th Cir. 1982) ("In the absence of a clear and knowing election, a court should not quickly infer that a

14

defendant unskilled in the law has waived counsel and has opted to conduct his own defense.").[7] As explained, however, the right to testify is a right to choose between the competing rights of testifying and remaining silent. In this circumstance, there is no "default" right; the district court could not order the defendant to testify if, after a colloquy, it was not satisfied that the defendant "waived" his right knowingly and intelligently. The right is a choice, and forcing a decision upon the defendant deprives him of the right to make that choice.

Second, a mandatory colloquy could suggest to the defendant that the district court believed that the defendant's choice of whether or not to testify was foolish. Van De Walker, 141 F.3d at 1452; Joelson, 7 F.3d at 178. This procedure "could inappropriately influence the defendant to waive his constitutional right not to testify, thus threatening the exercise of this other, converse, constitutionally explicit, and more fragile right." Siciliano v. Vose, 834 F.2d 29, 30 (1st Cir. 1987) (citations omitted). Experience demonstrates that district courts sometimes provide inappropriate commentary when they inject themselves into a defendant's choice of whether to testify. See, e.g., Leggett, 162 F.3d at 248; Joelson, 7 F.3d at

_____

[7] The Eleventh Circuit adopted as binding precedent decisions by non-unit panels of the Former Fifth Circuit handed down after October 1, 1981. Stein v. Reynolds Securities, Inc., 667 F.2d 33, 34 (11th Cir. 1982) ("Had the decision[, which was handed down on October 15, 1981,] been made by a non-unit panel of the Former Fifth, the full en banc court of the Former Fifth, or Unit B panel of the Former Fifth Circuit, we would regard the decision as binding precedent . . . .").

15

176–78; United States v. Goodwin, 770 F.2d 631, 635–38 (7th Cir. 1985). As we state above, the defendant's right to testify is personal to him. He may use that personal right to choose to testify, or not to testify; many inputs come into this decision, and inserting the district court's implied preference would intrude into this protected choice.

Finally, it is unclear how such a colloquy would proceed. An informed decision to testify requires many considerations, including the defendant's credibility; how well the defendant would withstand cross-examination; and what types of damaging evidence would be admissible as impeachment. See Liegakos v. Cooke, 106 F.3d 1381, 1386 (7th Cir. 1997) ("A judge could probe whether the accused is making an intelligent choice only by exploring all of the options open to the defense—what evidence is available, what witnesses [are] reliable, what could be brought out on cross-examination if the defendant testifies, and so on."). These considerations are fact-intensive and would vary with each case. Consequently, it would be unlikely that any stock colloquy could render a pro se defendant's decision truly knowing and intelligent.

## B.

The Government contends that a district court has no responsibility to correct a pro se defendant's misunderstanding. To make this argument, the

16

Government begins with the established premise that a criminal defendant places himself at a great disadvantage when he proceeds pro se. Faretta, 422 U.S. at 833–35, 95 S. Ct. at 2540–41. "Even the intelligent and educated layman has small and sometimes no skill in the science of law. . . . Without [trial counsel], though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence." Powell v. Alabama, 287 U.S. 45, 69, 53 S. Ct. 55, 64, 77 L. Ed. 158 (1932). And ignorance is no hidden virtue; a pro se defendant must follow the rules of procedure and evidence, Faretta, 422 U.S. at 834 n.46, 95 S. Ct. at 2541 n.46, and the district court has no duty to act as his lawyer, Pliler v. Ford, 542 U.S. 225, 231, 124 S. Ct. 2441, 2445–46, 159 L. Ed. 2d 338 (2004) (holding that district courts are not required to provide pro se litigants special warnings regarding the treatment of "mixed petitions" under the habeas statute). The Government also points to our precedent holding that district courts need not sua sponte engage in a colloquy with a represented defendant regarding his right to testify. Van De Walker, 141 F.3d at 1452; Teague, 953 F.2d at 1532–33. Based on these established principles, the Government contends that the district court here had no duty to correct Ly's obvious misunderstanding and that Ly must bear the burden of his decision to forgo counsel.

None of our precedents require this outcome. Teague and Van De Walker

17

were premised on the presence of an attorney-client relationship; we held that a defendant's decision whether to testify was best made after discussing the matter with his attorney. Van De Walker, 141 F.3d at 1452; Teague, 953 F.2d at 1533. In that context, a district court's colloquy with the defendant regarding that decision would be inappropriate because it would intrude on that legally-sacred attorney-client relationship. Van De Walker, 141 F.3d at 1452; Teague, 953 F.2d at 1533 n.8. Since Ly had no attorney, the thrust of Teague and Van De Walker are not present in this case.

Moreover, the Government's argument ignores the fundamental nature of a defendant's right to testify. The Supreme Court instructs courts to "indulge every reasonable presumption against waiver of fundamental constitutional rights." Johnson, 304 U.S. at 464, 58 S. Ct. at 1023. Accordingly, a district court must engage in a searching inquiry to determine whether a defendant has knowingly and intelligently waived other fundamental rights, such as the right to counsel, Carnley, 369 U.S. at 515–16, 82 S. Ct. at 890, and the right to a jury trial, Boykin, 395 U.S. at 242–43, 89 S. Ct. at 1712.

Finally, the Government's position ignores the extra protections normally afforded to pro se litigants. "[I]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se

18

litigants from inadvertent forfeiture of important rights because of their lack of legal training." Johnson v. Schmidt, 83 F.3d 37, 39 (2d Cir. 1996) (citation and internal quotation marks omitted). For instance, we read pro se briefs liberally to ensure that such litigants do not, through their ignorance of legal terminology, waive claims. United States v. Webb, 565 F.3d 789, 792 (11th Cir. 2009) (per curiam) (regarding a pro se defendant's motion for sentence reduction). And, in Johnson, the Second Circuit went one step further and required the district court to explain to the pro se plaintiff the risks of using a unique procedural rule in a civil case. 83 F.3d at 39. Even the district court here provided Ly with limited assistance; it informed Ly that he could call witnesses to impeach the credibility of the Government's witnesses.

These principles show that a district court can—and sometimes must—aid an ignorant pro se defendant. As discussed in part III.A, supra, we do not believe that district courts must engage in a colloquy with every pro se defendant regarding his decision whether to testify. But for us to permit total inaction—particularly where the district court begins the colloquy and reinforces the defendant's misunderstanding—would ignore the judiciary's duty to safeguard constitutional rights. Cf. Von Moltke v. Gillies, 332 U.S. 708, 722, 68 S. Ct. 316, 322, 92 L. Ed. 309 (1948) ("It is the solemn duty of a federal judge before whom a defendant

19

appears without counsel to make a thorough inquiry and to take all steps necessary to insure the fullest protection of this constitutional right at every stage of the proceedings."). Adopting the Government's position would constitute "hollow compliance with the mandate of the Constitution" and suggest to other criminal defendants that the right to testify is not fundamental, but rather "just another legalistic formality." See id. at 723, 68 S. Ct. at 323.

C.

We therefore conclude that the district court was required to correct Ly's misunderstanding of his right to testify. By not informing Ly that he could testify in narrative form, the district court denied his right to choose whether to testify "knowingly and intelligently." This case falls within one of the "exceptional, narrowly defined circumstances" that trigger a district court's duty to discuss with a criminal defendant his decision of whether to testify. Van De Walker, 141 F.3d at 1452 n.2 (citations and internal quotation marks omitted); see also United States v. Pennycooke, 65 F.3d 9, 12 (3d Cir. 1995). As we explain, the district court's knowledge of Ly's confusion is the driving force behind our decision.

The courts of appeals have alluded to such "exceptional circumstances" where the trial court knows that the defendant has not exercised his right to decide whether to testify "knowingly and intelligently." See, e.g., Van De Walker, 141

20

F.3d at 1452 n.2; United States v. Ortiz, 82 F.3d 1066, 1071 (D.C. Cir. 1996); Pennycooke, 65 F.3d at 12. These instances include where the defendant tells the trial court that defense counsel ignored his expressed desire to testify, Ortega v. O'Leary, 843 F.2d 258, 260–62 (7th Cir. 1988), and when the "defendant has taken a position that threatens to jeopardize the defense case and there appears to be no rational explanation for the decision," Ortiz, 82 F.3d at 1071 (citing Goodwin, 770 F.2d 636). But where the defendant remains silent, the courts of appeals have been reluctant to require courts to engage in a colloquy, for the reasons described in part III.A, supra. See, e.g., Leggett, 162 F.3d at 240, 247 (finding that the district court had no duty to inquire because it "had no way of knowing" that defense counsel had ignored the defendant's request to testify); Ortiz, 82 F.3d at 1072 ("Nothing in the trial record gave the district court any reason to doubt Oritz' counsel's representation" that the defendant made an informed decision not to testify.).

This dichotomy suggests that, absent evidence to the contrary, district courts should presume that the defendant, even a pro se defendant, has made a knowing and intelligent decision about whether to testify. See Ortiz, 82 F.3d at 1072 (stating that the defendant's silence creates a rebuttable presumption that he exercised his right knowingly and intelligently); Jordan v. Hargett, 34 F.3d 310, 315 (5th Cir. 1994) (holding similarly on habeas review). This presumption

properly balances competing interests. District courts will not unnecessarily inject themselves into a defendant's decision making; neither will they ignore a defendant's obvious unknowing or unintelligent choice whether to testify.

The ways in which a district court could "know" that a defendant is not intelligently or knowingly exercising his right to testify need not be set out here. In Ly's case, the district court clearly knew that Ly did not understand that he could testify in narrative form, and that this misunderstanding drove his decision not to testify. The court knew this because it initiated the colloquy during which Ly's misunderstanding became apparent. And by not correcting Ly's misunderstanding, the court reinforced Ly's mistaken view. See Jacinto v. INS, 208 F.3d 725, 728 (9th Cir. 2000) (finding that the immigration judge's confusing instructions violated due process because they suggested that the asylum-seeker had to choose between her right to counsel and her right to testify).

## D.

Ly and the Government also disagree about whether harmless error applies to this case. When we determine that a defendant's constitutional rights were violated, the conviction will nevertheless stand if "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." United States v. Gari, 572 F.3d 1352, 1362 (11th Cir. 2009) (citations and internal

22

quotation marks omitted). Certain errors, however, are "structural" and "defy analysis by harmless-error standards because they affec[t] the framework within which the trial proceeds, and are not simply an error in the trial process itself." United States v. Gonzalez-Lopez, 548 U.S. 140, 148–49, 126 S. Ct. 2557, 2564, 165 L. Ed. 2d 409 (2006) (citing Arizona v. Fulminante, 499 U.S. 279, 309–10, 111 S. Ct. 1246, 1265, 113 L. Ed. 2d 302 (1991)); see also United States v. Campbell, 223 F.3d 1286, 1294 (11th Cir. 2000) (per curiam) (collecting cases).

Assuming that harmless-error analysis applies,[8] we cannot find the district court's error harmless. At trial, the Government presented an impressive display of evidentiary firepower: expert witnesses, local pharmacists, and Ly's former

---

[8] A case from the old Fifth Circuit, to which we are bound, Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), suggests that harmless-error analysis applies to the right to testify. Wright v. Estelle, 549 F.2d 971 (5th Cir. 1977), adhered to en banc, 572 F.2d 1071, 1072 (1978). In Wright, the panel opinion rejected a habeas petitioner's claim that his counsel refused to let him testify, holding that any error was harmless. Id. at 974. The full court of fourteen judges decided to rehear the case en banc and again rejected the petitioner's claim. Wright v. Estelle, 572 F.2d 1071, 1072 (5th Cir. 1978) (en banc). In a section titled "BY THE COURT," the opinion reads, "the Court en banc adheres to the panel opinion as published," suggesting that the harmless-error application remained law. Id. But only six judges appeared to agree with the harmless error rationale. Five judges, concurring, "disagree[d] with the majority's reasoning" but did not state whether they believed the right to testify was subject to harmless-error analysis. Id. at 1072–73 (Thornberry, J., specially concurring). And a dissent, speaking for three judges, would have found that harmless-error analysis does not apply to denials of the right to testify. Id. at 1080–82 (Godbold, J., dissenting).

We cannot find a case from our circuit confirming the validity of Wright's harmless-error analysis, and we note that a subsequent case vacating a defendant's conviction based on a denial of the right to testify did not engage in harmless-error analysis. United States v. Scott, 909 F.2d 488 (11th Cir. 1990). But see United States v. Teague, 908 F.2d 752, 760–61 (11th Cir. 1990), vacated en banc, 953 F.2d 1525, 1526, 1534 (1992) (applying harmless-error analysis, but vacated in favor of analyzing the defendant's claim under an ineffective-assistance-of-counsel framework). This issue will be resolved in another case.

23

patients. Against that evidence, however, Ly presented nothing. This absence deprived the jury of an alternate narrative. Were Ly to testify, he could have explained his diagnostic procedures and his understanding of pain-management techniques. In this context, we cannot conclude beyond a reasonable doubt that the district court's denial of Ly's right to testify did not contribute to Ly's conviction.

IV.

We stress that our holding is limited to instances in which the district court begins a colloquy regarding the defendant's right to testify. This area of the law is not well laid, and we should proceed with caution. A district court runs the risk of denying a defendant's right to testify by engaging in too searching of an inquiry; its questions might dampen the defendant's protected choice. See part III.A, supra. But we think that requiring a district court to correct a pro se defendant's basic misunderstanding regarding his fundamental right to testify is not a heavy burden when the court has already ventured into the fray and begun its colloquy with the defendant. Because the district court failed in this respect, Ly's convictions are VACATED and the case is REMANDED to the district court.[9]

---

[9] Ly argued on appeal that the district court erred when it considered his wife's assets in deciding whether he was eligible for appointed counsel. Specifically, he argued that Georgia law prohibits him from accessing those funds, a point that he did not raise below. We express no view on the validity of this argument, and assume that the district court will consider this point should the Government proceed to re-try Ly.

SO ORDERED.