[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-16135

_____

D.C. Docket No. 2:10-cr-14069-JEM-3


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DARRIUS JAMAR GATLIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 1, 2013)


Before MARCUS, HILL, and SILER,[*] Circuit Judges.


SILER, Circuit Judge:

---

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

Defendant Darius J. Gatlin pled guilty to conspiracy to possess with intent to distribute cocaine and possession of a firearm in furtherance of a drug trafficking crime. He appeals his sentence on the grounds that the government breached the plea agreement. For the reasons that follow, we **AFFIRM**.

**I.**

In 2010, Gatlin and two co-defendants, James George and Jeff Holland, conspired with an undercover ATF agent to rob a narcotic stash house. The defendants and the agent, who posed as a narcotics courier, hatched a plan to rob the stash house of fifteen kilograms of cocaine. For his role in the robbery, the agent was to keep five kilograms of cocaine.

On the night of the planned robbery, the defendants met the agent at a park in Tamarac, FL. From there, the agent drove them to an undercover warehouse to make their final preparations and discuss the robbery plan one last time. The agent was going to enter the stash house and leave with two kilograms of cocaine and the defendants were supposed to come in behind him after he left and take the rest by force. After discussing the plan, the agent left the warehouse and the defendants were arrested by the police.

At some point after his arrest, Gatlin told investigators that when he, George, and Holland met at the park on the night of the planned robbery, they decided that

2

robbing the stash house was too risky and instead they were going to double cross the agent and rob him of the two kilograms of cocaine that he was supposed to take from the stash house. On this basis, in exchange for a guilty plea by Gatlin, the government agreed to jointly recommend to the court, for the purposes of sentencing, that the quantity of cocaine involved in the offense was at least 500 grams but less than two kilograms. However, as part of the plea agreement, Gatlin signed a stipulation of facts that twice referenced fifteen kilograms of cocaine, but failed to mention the defendants' alleged last minute change of plan to instead rob the agent of two kilograms.

The district court first questioned the factual basis for this recommendation at the change of plea hearing for Gatlin and George. Fletcher Peacock, Gatlin's attorney, explained to the district court that the "actual agreement," in the conspiracy, not the plea agreement, was for an amount of cocaine between 500 grams and two kilograms. Assistant United States Attorney Russell Killinger responded that he did not "know that [he could] accept that" proposition. Ultimately the court made it clear that it would consider the recommendation in the plea agreement, but that the defendants "[couldn't] change facts" and that it was the court's responsibility to "decide[] what the facts are, not the government."

George and Gatlin were sentenced on the same day, with George going first. After listening to George's objection to and argument against the quantity of

3

cocaine found to be involved in the offense in the presentence investigation report ("PSR"), which was fifteen kilograms, the court stated that it was "not going to go for the two kilos," and that it did not "care what the government recommend[ed]."

Nevertheless, the court then pressed Killinger to defend the government's recommendation. Killinger stated that paragraph 23 of the PSR was the "whole reason" for recommending two kilograms of cocaine. Paragraph 23 of the PSR states that "[i]n a later debriefing, Gatlin told agents that he, George and Holland, had agreed among themselves that instead of robbing the stash house, they would rob the [undercover agent] after he left the stash house with two kilograms of cocaine."

Killinger recounted the specifics of paragraph 23 to the court, stating that, according to Gatlin, the defendants "changed their plan" when they got to the park and were going to "just . . . rip off the undercover when he came out with his two kilos." Killinger finished his defense of the government's recommendation by stating that "there is [] somewhat of a factual basis" for two kilograms as the quantity of cocaine, but charged that it was the defense's burden to establish that quantity. After hearing from George's counsel again, the court rejected the recommendation because it could not "accept as true something that [it did] not believe is true."

4

After the court sentenced George, it immediately began the sentencing hearing for Gatlin. Peacock informed the court that he had been present during George's sentencing hearing and that he wished to object to the quantity of cocaine recommended in the PSR. Before hearing Peacock's argument, the court summarized for Gatlin's benefit that it did "not choose to accept a recommendation that the amount involved in this case was two kilograms," that it had no doubt "that the amount being discussed was in fact 15 kilograms," and that "whether the defendants had a subjective standard in their own minds that they were only going to . . . steal two kilograms . . . [did]n't matter."

The court then allowed Peacock to make an argument on behalf of his client. Prior to the court's rejection of two kilograms as the quantity of cocaine, Killinger spoke only once. He was asked by the court to clarify what the agent's cut was supposed to be and how much he was supposed to take from the stash house. Killinger stated that "the agent's cut of 15 was going to be five," and that the "understanding was [] that the undercover agent was going to go into the house and that he was [going] to leave with two, and then [the defendants] were going to go in and take the remainder." In concluding his argument, Peacock responded to the burden of proof charge that Killinger had made during George's hearing by asserting that "under the guideline system it is the Government's burden to go forward and to prove the amount when it's objected to."

5

The court overruled Gatlin's objection, but then asked the government whether it had anything to add to the argument before it considered a motion for a downward variance under 18 U.S.C. § 3553(e).  Killinger stated that "I did enter into this plea agreement, I abide by the – I'm not retreating from the nonbinding joint recommendation . . . ."  He further stated that the PSR "referenced [] 15 kilograms" "three or four times," and that Gatlin had not objected to those references.  He concluded that "as far as any Government[] burden or the Court's basis for finding relevant conduct in this case, I think there's more than a sufficient basis to do so."

The court sentenced both George and Gatlin using fifteen kilograms as the quantity of cocaine involved in the offense for purposes of calculating their guideline range.  Gatlin was granted a downward variance under § 3553(e) and sentenced to 132 months imprisonment for Count I, for a total sentence of 192 months imprisonment.  Gatlin timely appealed.

## II.

We review *de novo* the question of whether the government breached a plea agreement.  *United States v. Copeland*, 381 F.3d 1101, 1104 (11th Cir. 2004).  However, where a defendant fails to object to an alleged breach of a plea

6

agreement before the district court, we review for plain error. *United States v. Romano*, 314 F.3d 1279, 1281 (11th Cir. 2002).

The parties dispute the applicable standard of review. The government argues that Gatlin failed to object in the district court to the government's performance of its obligations under the plea agreement. Gatlin argues that it would have served no purpose for his counsel to formally object. He contends that the policies behind the contemporaneous objection requirement are not implicated here because the government would not have cured its breach. Alternatively, Gatlin cites *United States v. Todd*, 486 F. App'x 88 (11th Cir. 2012) (unpublished), for the proposition that although he never expressly objected to the government's performance, it was clear to the district court that he thought the government was breaching the plea agreement.

The facts here resemble those in *Romano*, where the underlying issue was the application of specific sentencing guideline enhancements. 314 F.3d at 1280-81. The government had agreed not to oppose the defendant's request that only three specific enhancements be applied, which would have increased the defendant's offense level to 19. *Id.* at 1280. At sentencing, the probation officer recommended in the PSR that two additional enhancements be applied to raise the offense level to 23. *Id.* The government supported and argued for the application of the additional enhancements. *Id.* at 1281. Although the defendant objected to

7

the application of the enhancements, he never objected to the government's breach of the plea agreement. *Id.* at 1280. On appeal, we held that the defendant failed to raise the government's breach before the district court and was thus subject to plain error review. *Id.* at 1281.

Here, like the defendant in *Romano*, Gatlin argued the underlying issue—the quantity of cocaine involved in the offense conduct. However, at no time did Gatlin object to the government's performance of its obligation under the plea agreement. Gatlin's reliance on *United States v. Ly*, 646 F.3d 1307 (11th Cir. 2011), for the contention that the policies behind the contemporaneous objection requirement are not implicated here is misplaced. In holding that plain error review did not apply to Ly's claim, we reasoned that plain error review would have been absurd where Ly's ignorance of the law "was so apparent during the court-initiated colloquy that the district court was obligated to correct his misunderstanding." *Id.* at 1312 n.5. Here, it was not "so apparent" that Gatlin was ignorant of the government's requirement to meet its obligations under the plea agreement or ignorant of what those obligations were that the court was obligated to intervene.

Gatlin's reliance on *Todd* is also misplaced. There, the defendant specifically raised the issue of the government's promise in the plea agreement in response to a dispute with the government as to whether the defendant had met the

8

requirements in order to receive a reduction for the acceptance of responsibility. *Todd*, 486 F. App'x at 90-91. No such dispute was present here. When the government asserted that it was not retreating from the joint recommendation, it was doing so because the court had already overruled Gatlin's objection to the quantity of cocaine recommended in the PSR, not because Gatlin alleged a breach.

## III.

Plain error exists where (1) there is error, (2) that is plain, (3) that affected the defendant's substantial rights, and (4) that "seriously affect[ed] the fairness, integrity, or public reputation of the judicial proceedings." *Romano*, 314 F.3d at 1281. An error is plain if it is "clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009).

### A. Clear and Obvious Error

The government breached the plea agreement here by undercutting its promise at least four times. First, when Gatlin's counsel explained to the court that the "actual agreement," in the conspiracy, not just the plea agreement, was for an amount of cocaine between 500 grams and two kilograms, Killinger responded that he did not "know that [he could] accept that" proposition. This was clearly a "material reservation[] about the agreement." *United States v. Canada*, 960 F.2d 263, 270 (1st Cir. 1992).

9

Further, although the plea agreement did not explicitly require the government to stipulate that the "actual agreement" in the conspiracy was for less than two kilograms, it was "entirely reasonable for [Gatlin] to understand the government's promise" to include this recommendation. *United States v. Taylor*, 77 F.3d 368, 370 (11th Cir. 1996). Otherwise, the court would not have had a factual basis for the joint recommendation.

Second, the government's response to the court's inquiry regarding the agent's role also undercut its promise to recommend a quantity of less than two kilograms. Killinger concluded his response by stating that the defendants "were going to go in and take the remainder." While not directly contradicting the government's promise, Killinger's failure to mention the defendants' ulterior plan to rob the agent of two kilograms as he left the stash house undercut the government's promise because it left the impression that the defendants had no plan other than to rob all fifteen kilograms of cocaine.

Third, the government never affirmatively recommended that the court find that the quantity of cocaine involved in the offense was less than two kilograms. The closest the government came during Gatlin's sentencing was when Killinger admitted that he entered into the plea agreement, and that he was abiding by and "not retreating from the nonbinding joint recommendation."

Lastly, Killinger's response to Gatlin's challenge regarding the burden of proof for the objected-to quantity undercut the government's promise because Killinger highlighted that the court had "more than a sufficient basis" to determine the quantity of cocaine, including setting it at fifteen kilograms, which Killinger noted was referenced, and not objected to by Gatlin, "three or four times" in the PSR. In fact, this statement actively advocated the court to find the quantity involved to be fifteen kilograms, a quantity that is "inconsistent" and "incompatible" with the agreed-upon recommendation. *Taylor*, 77 F.3d at 370-71.

The numerous statements by the government undercutting its promise make the government's breach "clear or obvious, rather than subject to reasonable dispute." *Puckett*, 556 U.S. at 135. Thus, Gatlin satisfies the first prong of plain error review.

### B. *Substantial Rights*

In the context of an alleged plea agreement breach, the question of whether the defendant's substantial rights were affected is not whether the defendant would have entered into the plea, but rather, whether his sentence was affected by the government's breach. *Id.* at 142 n.4. This requires Gatlin to show that there is a "reasonable probability" that his sentence would be different. *United States v. Rodriguez*, 398 F.3d 1291, 1299 (11th Cir. 2005). "[W]here the effect of an error

11

on the result in the district court is uncertain or indeterminate – where we would have to speculate – the appellant has not met the burden of showing . . . prejudice; he has not met his burden of showing that his substantial rights have been affected." *Id.* at 1301 (citing *Jones v. United States*, 527 U.S. 373, 394-95 (1999)).

Gatlin argues that the court indicated "some initial willingness" to consider his argument at sentencing, but the government's breach eliminated any chance that the court would accept his position. However, the record clearly indicates that, at the very least, the court was leaning toward overruling Gatlin's objection prior to his sentencing hearing.

At the defendants' joint change of plea hearing, when Peacock tried to explain to the court that the agreement in the conspiracy involved less than two kilograms of cocaine, the court responded by asking "how in the world is it less than two?" The court further explained that the defendants couldn't "change the facts" and that the court is "the one that decides what the facts are, not the Government." The court then informed the parties that it would consider the recommendation.

At George's sentencing, which occurred immediately before Gatlin's, the court found that the quantity of cocaine involved was fifteen kilograms and declared that "[it didn't] care what the Government recommend[ed]," and called

Gatlin's ulterior plan to rob the agent of two kilograms a "legal fiction." The court stated that it was "not crazy about Mr. Killinger having agreed to the fact that it was two kilos," because it did not believe that was true. At the opening of Gatlin's sentencing hearing, the court summarized George's hearing for Gatlin's benefit. The court pronounced that it did "not choose to accept a recommendation that the amount involved in this case was two kilograms," that it had no doubt "that the amount being discussed was in fact 15 kilograms," and that "whether the defendants had a subjective standard in their own minds that they were only going to . . . steal two kilograms . . . [did]n't matter."

These comments show that the court was well aware of the facts of the case and the joint recommendation. Although the question of whether a breach of the plea agreement affected the court is normally irrelevant under *de novo* review, *see Santobello v. New York*, 404 U.S. 257, 262-63 (1971), under plain error review, its effect on the court is directly relevant to the question of whether the defendant's substantial rights have been affected. *See Rodriguez*, 398 F.3d at 1299-1301. Here, without the government's breach, there is not a "reasonable probability" that Gatlin's sentence would be different. At best, it seems uncertain, and that is not enough. Thus, the government's breach did not affect Gatlin's substantial rights.

**AFFIRMED**.

HILL, Circuit Judge, concurring:

Bound by our plain error standard of review, I concur.

14