**REVISED May 11, 2018**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-40165

UNITED STATES OF AMERICA,

United States Court of Appeals
Fifth Circuit

**FILED**

April 23, 2018

Lyle W. Cayce
Clerk

Plaintiff - Appellee

v.

SANTIAGO HUMBERTO RODRIGUEZ-APARICIO,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before KING, HAYNES, and HIGGINSON, Circuit Judges.

KING, Circuit Judge:

Discontent with the services of his federal public defender, Santiago Humberto Rodriguez-Aparicio opted to represent himself. A two-day jury trial yielded a conviction on a charge of illegal reentry. On appeal, he argues that the district court effectively denied him the right to testify in his own defense. During a hearing focused on his waiver of the right to counsel, Rodriguez told the court that he understood he would receive "two more points" at sentencing if he testified. According to his argument on appeal, that triggered a duty to set him straight and explain that the penalty was not, in fact, automatic. Under the circumstances, we hold that there was no such duty. Rodriguez also

No. 17-40165

contends that the district court should have dismissed his indictment based on defects in his removal proceedings. But he concedes that our precedent forecloses this argument. As a result, we AFFIRM his conviction and sentence.

## I.

## A.

Santiago Humberto Rodriguez-Aparicio is a citizen of El Salvador. He was admitted into the United States as a lawful permanent resident in 1994. Thirteen years later, in 2007, U.S. Immigration and Customs Enforcement ("ICE") sought to remove him from the country based on a California firearm conviction. *See* 8 U.S.C. § 1227(a)(2)(C) (providing for removal of "[a]ny alien who at any time after admission is convicted under any law of . . . possessing[] or carrying . . . a firearm"). ICE served Rodriguez with a document titled "Stipulated Request for Removal Order and Waiver of Hearing Made By Respondent Who is Unrepresented." Rodriguez signed the stipulation. In doing so, he admitted to the facts alleged by ICE. He also waived his right to an attorney, a hearing, discretionary relief, and any appeal of the immigration judge's order. An immigration judge then ordered Rodriguez removed. ICE dispatched him to El Salvador by plane the next month.

In 2009, Rodriguez was charged in the District of Nevada with illegal reentry and illegal possession of a firearm and ammunition. He moved to dismiss the indictment, arguing that the immigration judge's failure to advise him of his eligibility for voluntary departure violated his right to due process. The Government declined to respond and instead moved to dismiss the illegal reentry count of the indictment. Rodriguez was convicted following a jury trial on the remaining counts and sentenced to 41 months' incarceration. He was removed from the United States two years later.

2

No. 17-40165

Rodriguez once again turned up in the United States in March 2015, when U.S. Customs and Border Patrol ("CBP") apprehended him near the Rio Grande River.

## B.

A grand jury in the Southern District of Texas returned an indictment charging Rodriguez with illegally reentering the United States, in violation of 8 U.S.C. § 1326(a), (b). Rodriguez pleaded not guilty.

During pretrial proceedings, Rodriguez repeatedly aired his dissatisfaction with his federal public defender. According to Rodriguez, his attorney was resisting his request to file a motion to dismiss the indictment based on defects in his removal proceedings. Rodriguez's counsel ultimately complied with his request. In the motion, counsel argued that the immigration judge's failure to advise Rodriguez of his eligibility for voluntary departure violated his due process rights but conceded that the issue was foreclosed in the Fifth Circuit. The district court denied the motion.

Rodriguez's dissatisfaction with his attorney did not abate in the months leading up to trial. He ultimately requested that he be allowed to represent himself. The district court advised him against doing so. Rodriguez responded that he believed he would lose regardless and preferred to represent himself. Said Rodriguez, "I've already been to trial once before and I think I can do it." The court explained the charges, the maximum punishments, the immigration consequences, and the sentencing procedures. It advised Rodriguez that it would expect him to hew to the Federal Rules of Evidence and Criminal Procedure. If he decided to take the witness stand, the court told him that he would be required to ask himself questions and could not testify in narrative form. The court next informed Rodriguez that if he represented himself, the court would not give him legal advice, except to stop him from presenting inadmissible evidence or improper arguments.

3

No. 17-40165

The district court strongly urged Rodriguez not to represent himself in light of the "serious penalty" he might be facing. In response to that remark, Rodriguez asked, "The punishment, will it be higher if I have an attorney or if I represent myself?" The court responded as follows:

> [T]here are some things that an attorney can advise somebody as to how the sentencing guidelines might be different whether somebody goes to trial or not go to trial and all those other things *and whether a person takes the stand and whether they don't take the stand*, all those things that might affect a sentence. . . .
> And so if you decide to do that, well, you're running—making that decision without having benefit of a lawyer advising you as to what, if anything, under the factors that the Court has to consider would make an effect on the sentence. A lawyer knows that, but you don't. . . .
> I'm not here to give you legal advice and so that's not my role.

(Emphasis added). Rodriguez then offered, "I understand that if I testify I will get two more points." The court responded, "I'm not here to give you that advice either." Rodriguez confirmed that he understood and reaffirmed his desire to represent himself.

The court ruled that Rodriguez had knowingly and voluntarily waived his right to counsel. It appointed Rodriguez's public defender as standby counsel. The court explained to Rodriguez that standby counsel would not be representing him but would be available for legal questions.

## C.

The jury trial lasted two days. During his opening statement, Rodriguez told the jury, "My name is Santiago Rodriguez-Aparicio. I have been in this country for over 20 years as a legal resident." The court stopped Rodriguez, explaining that he could not make a personal statement but was instead limited to summarizing what the evidence would show at trial. Rodriguez

4

continued, "I do not have very much in the way of evidence but I will try to do what I can and to speak and to present my defense. That's all."

The Government presented its case through four witnesses: two CBP agents, a fingerprint examiner, and a custodian of records for the U.S. Customs and Immigration Services. Rodriguez's efforts to present a defense were limited. He cross-examined only some of the Government's witnesses—with little success. The court twice inquired about whether Rodriguez planned to call any defense witnesses. On both occasions, Rodriguez indicated that he planned to present evidence to challenge his prior removals. But the court forbade him from doing so. Rodriguez consulted with standby counsel and ultimately decided not to call any witnesses.

Rodriguez began his closing statement by telling the jury, "I am my own lawyer, my own defendant, because as the law says, I always wanted to have a fair trial. . . . I have been in this country since I was not of legal age." The Government objected to Rodriguez's attempt to testify, and the court sustained the objection. Rodriguez continued, telling the jury that he did not have any evidence to disprove the Government's charges because he had not been allowed to present it. The court interrupted once again to tell Rodriguez that he could not make arguments about evidence not presented to the jury. Rodriguez resumed his closing argument, observing that "beyond a reasonable doubt, no one has testified that they have seen me leave this country." He wrapped up by telling the jury, "[T]he decision is yours."

The jury returned a verdict of guilty. The court imposed a sentence of 27 months' incarceration. Rodriguez appeals.

## II.

On appeal, Rodriguez argues that the district court denied him his right to testify by failing to correct his misconception that he would receive an automatic sentencing enhancement for doing so. As the Government notes,

No. 17-40165

Rodriguez never raised this claim in the district court. Rodriguez nonetheless argues that applying plain error would be "absurd" because he represented himself and did not understand the law. We decline to resolve this dispute because Rodriguez's argument "fails even under the de novo standard he advocates." *United States v. Compian-Torres*, 712 F.3d 203, 206 (5th Cir. 2013).

"Every criminal defendant is privileged to testify in his own defense, or to refuse to do so." *Rock v. Arkansas*, 483 U.S. 44, 53 (1987) (quoting *Harris v. New York*, 401 U.S. 222, 225 (1971)); *see also* 18 U.S.C. § 3481 ("[T]he person charged shall, at his own request, be a competent witness."). This right is personal to the defendant: only he, not counsel, may make the choice. *See United States v. Mullins*, 315 F.3d 449, 452 (5th Cir. 2002). And he must do so knowingly and voluntarily. *Id.* Even so, "[a]n overwhelming majority of the circuits have held that a district court generally has no duty to explain . . . [the] right to testify or to verify that the defendant . . . has waived the right voluntarily." *United States v. Brown*, 217 F.3d 247, 258 (5th Cir. 2000) (citing *United States v. Leggett*, 162 F.3d 237, 246 (3d Cir. 1998) (collecting cases)), *vacated on other grounds sub nom. Randle v. United States*, 531 U.S. 1136 (2001).[1] In reaching that conclusion, courts have recognized that requiring the trial court to do so "could inappropriately influence the defendant to waive his constitutional right *not* to testify, thus threatening the exercise of this other, converse, constitutionally explicit, and more fragile right." *Siciliano v. Vose*, 834 F.2d 29, 30 (1st Cir. 1987) (Breyer, J.); *accord Brown*, 217 F.3d at 258.

Some courts have recognized that the district court may nonetheless have such a duty "in exceptional, narrowly defined circumstances." *United*

---

[1] On remand from the Supreme Court and after granting panel rehearing, the panel affirmed its original holding that the district court generally has no duty to explain the right to testify and confirm the defendant's waiver of that right. *See United States v. Randle*, 304 F.3d 373, 378–79 & n.4 (5th Cir. 2002).

*States v. Pennycooke*, 65 F.3d 9, 12 (3d Cir. 1995); *see id.* at 13 (when defendant's counsel "is frustrating his or her desire to testify"); *see also United States v. Ly*, 646 F.3d 1307, 1317 (11th Cir. 2011) (when the defendant is pro se and it is clear to the court that he misunderstands the right); *United States v. Stark*, 507 F.3d 512, 516–17 (7th Cir. 2007) (when the court is aware of a conflict between counsel and the defendant as to whether the defendant will testify); *United States v. Webber*, 208 F.3d 545, 552 (6th Cir. 2000) (adopting the reasoning in *Pennycooke*); *United States v. Ortiz*, 82 F.3d 1066, 1071 (D.C. Cir. 1996) (when the court is aware of a conflict between counsel and the defendant, or the defendant's decision not to testify "threatens to jeopardize the defense case and there appears to be no rational explanation for the decision"); *United States v. Janoe*, 720 F.2d 1156, 1161 (10th Cir. 1983) (suggesting that the district court may be required to hold a hearing where there is evidence of disagreement between the defendant and counsel). Virtually all of these circumstances involve conflicts between the defendant and counsel. *See Stark*, 507 F.3d at 516–17; *Webber*, 208 F.3d at 552; *Pennycooke*, 65 F.3d at 12; *Janoe*, 720 F.2d at 1161. Only the Eleventh Circuit appears to have recognized a duty to correct a pro se defendant's evident misunderstanding of the right to testify. *See Ly*, 646 F.3d at 1317.

The defendant in *Ly* told the district court that he did not believe he could testify without a lawyer to ask him questions. *See id.* at 1311–12. As a consequence, he believed that if he testified, he would only be able to respond to cross-examination from the Government. *See id.* The district court did nothing to correct his misunderstanding. *See id.* at 1317. On appeal, the Eleventh Circuit held that the district court had a duty to do so. *See id.* It reasoned that a court is entitled to presume a knowing waiver only in the absence of evidence to the contrary. *See id.* But when the court "knows" that the defendant's waiver is based on a misunderstanding of the law, it has a duty

to inquire further. *See id.* The court declined, however, to "set out" all of "[t]he ways in which a district court could 'know' that a defendant is not intelligently or knowingly exercising his right to testify." *Id.* And it qualified its holding because it recognized that "[t]his area of the law is not well laid." *Id.* at 1318. It limited the duty to "instances in which the district court begins a colloquy regarding the defendant's right to testify" and to "requiring [the] district court to correct a *pro se* defendant's basic misunderstanding regarding his fundamental right to testify." *Id.*

We find no warrant to establish such a duty in this case. Here, unlike in *Ly*, the defendant's misunderstanding concerned the consequences of testifying, not the ability to do so. *See id.* at 1311 ("[W]ithout counsel, Your Honor, I can't testify."). And unlike *Ly*, this case does not involve a court-initiated inquiry during trial regarding the decision to testify. *See id.* at 1311, 1317–18. Rather, when Rodriguez made the statement regarding a sentence enhancement if he testified, the district court was in the process of holding a pre-trial hearing on Rodriguez's waiver of the right to counsel. The proceedings had not yet reached the point where Rodriguez was required to make that decision.

Nor are we confronted with a claim that the district court actively misinformed Rodriguez about the right. The decision to testify carries the possibility of a two-level sentence enhancement if the defendant commits perjury. *See* U.S.S.G. § 3C1.1; *United States v. Dunnigan*, 507 U.S. 87, 95 (1993). The district court simply told Rodriguez correctly that a lawyer could advise him as to how the decision to testify might affect his sentence—not that such a decision surely would. Moreover, the district court did not simply ignore Rodriguez's statement regarding the penalty for testifying. Instead, it told him that it could not offer legal advice, encouraged him to consult with a lawyer, and again emphasized the disadvantages of self-representation.

No. 17-40165

A requirement that the district court correct every misunderstanding relating to the right to testify would prove unworkable. The district court would be in the position of constantly monitoring the defendant's statements for evidence of such misunderstandings. If the district court erred in its effort to clear up a misunderstanding, it might have committed further error. Its explanation might itself require additional clarification, essentially putting the district court in the position of legal advisor to the defendant. By attempting to correct his misunderstanding, it might have inadvertently misstated the law, omitted a relevant consideration, or otherwise compounded his confusion. Further, it might have undercut the district court's disclaimer of a duty to offer legal advice, causing Rodriguez to think that, despite its disclaimer, the district court would correct his misunderstandings throughout trial. The court in this case took the more prudent course: it told Rodriguez that only a lawyer could advise him of the consequences of testifying and that it was not the court's role to do so. So admonished, Rodriguez nonetheless reaffirmed his commitment to self-representation.[2]

Once the district court accepted Rodriguez's waiver of his right to counsel, it appointed standby counsel and told Rodriguez to look to her for legal advice. Standby counsel is a safeguard, not an entitlement. *See United States v. Oliver*, 630 F.3d 397, 414 (5th Cir. 2011). "'[T]he wisdom of the trial judge' in appointing standby counsel lies in the fact that the pro se defendant will therefore have counsel available 'to perform all the services a trained advocate

---

[2] As we do not confront a claim that the defendant misunderstood his *ability* to testify, this opinion should not be read necessarily to dictate the same outcome in such a case. As explained earlier, the Eleventh Circuit has held that a district court has a duty to correct a pro se defendant's misunderstanding of his ability to testify when the court initiates a colloquy with the defendant regarding whether he will testify. *See Ly*, 646 F.3d at 1318. Whether such a duty exists under those circumstances remains an open question in this circuit.

would perform ordinarily[]' . . . ." *United States v. Padilla-Galarza*, 886 F.3d 1, 2018 WL 1444325, at *6 (1st Cir. 2018) (quoting *Mayberry v. Pennsylvania*, 400 U.S. 455, 467–68 (1971) (Burger, C.J., concurring)). Standby counsel was available to answer any legal questions, including about the procedure for testifying and the potential consequences of doing so. Indeed, the record reflects that Rodriguez consulted with standby counsel during trial despite their prior discord.[3]

Finally, Rodriguez argues that his attempts to testify in his opening and closing statements also demonstrate that he wanted to testify but misunderstood how to do so. These statements gave no indication that he had any desire to offer sworn testimony. Rather, they simply betray his confusion about proper argument in opening and closing statements. The district court explained to Rodriguez before trial that he could take the witness stand if he wished but would be required to ask himself questions. Rodriguez counters that this explanation only compounds any error because Rodriguez could have testified in narrative form. But the trial court had broad discretion to require testimony to be in question-and-answer, rather than narrative, form. *See* Fed. R. Evid. 611(a) advisory committee's note to 1972 proposed rules; *United States v. Beckton*, 740 F.3d 303, 306–07 (4th Cir. 2014); *Hutter N. Tr. v. Door Cty. Chamber of Commerce*, 467 F.2d 1075, 1078–79 (7th Cir. 1972). We find no error in the court's decision not to inquire about Rodriguez's desire to testify in light of his remarks in his opening and closing statements. Nor do we find error in the court's explanation of how Rodriguez could testify.

---

[3] This appears to be yet another point of distinction between this case and *Ly*, where there was no indication that the defendant had access to the advice of standby counsel during trial.

No. 17-40165

Accordingly, Rodriguez's possible misunderstanding of the consequences of testifying triggered no duty to explain the right to testify.[4]

## III.

This leaves the district court's denial of Rodriguez's motion to dismiss the indictment. We review this claim, including "any underlying constitutional claims," de novo. *United States v. Cordova-Soto*, 804 F.3d 714, 718 (5th Cir. 2015). As Rodriguez properly concedes, our precedent forecloses his argument. To challenge a prior order of removal in a prosecution under 8 U.S.C. § 1326, a defendant must show (1) exhaustion of administrative remedies, (2) improper deprivation of the right to judicial review, and (3) fundamental unfairness. *See* 8 U.S.C. § 1326(d). This court has held that eligibility for discretionary relief "is not a liberty or property interest warranting due process protection." *United States v. Lopez-Ortiz*, 313 F.3d 225, 231 (5th Cir. 2002). Thus, the failure to explain eligibility for discretionary relief "does not rise to the level of fundamental unfairness," at least not in this circuit.[5] *Id.* The district court therefore correctly denied Rodriguez's motion.

## IV.

For the foregoing reasons, we AFFIRM Rodriguez's conviction and sentence.

---

[4] We need not consider whether the denial of the right to testify is structural error because we hold that there was no error, structural or otherwise.

[5] The Second and Ninth Circuits have held otherwise. *See United States v. Lopez-Velasquez*, 629 F.3d 894, 896–97 (9th Cir. 2010) (en banc); *United States v. Copeland*, 376 F.3d 61, 70–73 (2d Cir. 2004). They are, however, in the minority. *See Lopez-Velasquez*, 629 F.3d at 897 n.2 (collecting cases); *Copeland*, 376 F.3d at 70 (collecting cases). And their decisions do not free us of our obligation to follow our own precedent absent intervening action by Congress, the Supreme Court, or our court sitting en banc. *See Mercado v. Lynch*, 823 F.3d 276, 279 (5th Cir. 2016) (per curiam).