# United States Court of Appeals
## For the First Circuit

No. 16-1035

UNITED STATES OF AMERICA,

Appellee,

v.

JOSE PADILLA-GALARZA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Kayatta, Stahl, and Barron,
Circuit Judges.

Lenore Glaser, with whom Law Office of Lenore Glaser was on brief, for appellant.
Julia M. Meconiates, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

March 23, 2018

**BARRON**, **Circuit Judge**. Jose Padilla-Galarza appeals his convictions for possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and for being a prohibited person in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). He contends that both convictions must be reversed on the ground that the evidence of his knowing possession of the contraband was insufficient. He argues in the alternative that the convictions must at least be vacated due to various alleged errors in the proceedings below -- principally that he was "forced" to represent himself pro se because, in his view, the District Court did not grant a sufficiently long continuance to enable his preferred court-appointed attorney to prepare for trial as full counsel. He also challenges two aspects of his sentence: a condition of his supervised release that he be evaluated for participation in a mental health treatment program and a child pornography forfeiture order. We affirm his convictions and sentence, subject to a remand for the limited purpose of striking the child pornography forfeiture order.

## I.

On January 9, 2015, federal law enforcement agents executed a search warrant at a house in Toa Baja, Puerto Rico, which the government alleges was Padilla's residence. Padilla, together with two siblings who lived in the continental United States, had inherited the house from their deceased parents.

During the search, the agents found ammunition and 1,293.10 grams of marijuana.  A grand jury thereafter indicted Padilla, who has a prior felony conviction, with one count of being a prohibited person in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1), and one count of possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

In pre-trial proceedings, two court-appointed attorneys represented Padilla.  However, on August 4, 2015 -- one week before trial was scheduled to begin on August 11 -- Padilla moved to dismiss both attorneys.[1]  After a hearing on that motion on August 5, the District Court denied it.  But, because Padilla indicated in his motion and at the hearing that he would be forced to represent himself pro se if his two attorneys were not dismissed, the District Court held another hearing on August 7 to ensure that any waiver of Padilla's constitutional right to counsel would be knowing, intelligent, and voluntary.  At this second hearing, the District Court offered to appoint a different attorney, whom Padilla preferred, as either full counsel or standby counsel, and the District Court ordered a fifteen-day continuance to enable the attorney to prepare.  Apparently because he thought a continuance

---

[1] At an earlier pre-trial hearing in July, Padilla had indicated his dissatisfaction with one of his attorneys because she did not "see eye to eye in case strategy" with him.  But the District Court found no grounds for dismissing her.

- 3 -

of that length would not give that attorney sufficient time to prepare for trial as full counsel, Padilla decided to proceed pro se with the assistance of that attorney as standby counsel.

Padilla was tried on August 26 and 27 of 2015. At the close of the government's evidence, Padilla moved for acquittal on both counts based on the insufficiency of the evidence against him. Padilla's standby counsel presented oral argument for the motion, which the District Court denied. Thereafter, Padilla did not testify or otherwise present evidence on his behalf. The jury then returned a guilty verdict on both counts. Afterwards, Padilla renewed his motion for acquittal, but the District Court denied it.

The District Court then sentenced Padilla to forty-six months of imprisonment and three years of supervised release. The District Court specified that, among the conditions of his supervised release, Padilla must "participate in an approved mental health treatment program for evaluation and/or treatment services determination." The District Court's written judgment also stated that Padilla must forfeit "[a]ny and all materials or property used or intended to be used in the possession, receipt, distribution or transportation of child pornography, pursuant to Title 18, USC Section 2253."

Padilla then filed this appeal. This Court appointed counsel to represent him in these proceedings.

- 4 -

Padilla first contends that his convictions must be reversed because the government's evidence was insufficient to convict him of either possession of a controlled substance with intent to distribute under § 841(a)(1) or being a prohibited person in possession of ammunition under § 922(g)(1). Because Padilla preserved this argument in his motion for acquittal, we review his challenge de novo, "viewing the evidence in the light most favorable to the government and taking all inferences in its favor." United States v. Piesak, 521 F.3d 41, 44 (1st Cir. 2008).

Padilla's challenge pertains solely to the knowledge requirement for both crimes. To sustain a conviction under either statute, the government must prove, among other things, that the defendant knowingly possessed the contraband. United States v. Guzmán-Montañez, 756 F.3d 1, 8 (1st Cir. 2014) (§ 922(g)(1)); United States v. García-Carrasquillo, 483 F.3d 124, 130 (1st Cir. 2007) (§ 841(a)(1)). Padilla acknowledges that marijuana and ammunition were found inside a bedroom in the house, but he contends that, notwithstanding this fact, the government failed to prove beyond a reasonable doubt that he knowingly possessed the ammunition and the marijuana.[2]

---

[2] It is also undisputed that additional ammunition was found elsewhere in the house. But, because we conclude that the evidence of Padilla's knowing possession of the ammunition in the bedroom

- 5 -

Significantly, for the purposes of both statutes under which Padilla was convicted, knowing possession of the contraband may be inferred from evidence of actual possession (meaning "immediate, hands-on physical possession") or constructive possession. Guzmán-Montañez, 756 F.3d at 8 (§ 922(g)(1)); accord García-Carrasquillo, 483 F.3d at 130 (§ 841(a)(1)). And, as pertinent here, "[i]n order to show constructive possession, the government must prove that the defendant 'had dominion and control over the area where the contraband was found.'" United States v. Wight, 968 F.2d 1393, 1397 (1st Cir. 1992) (quoting United States v. Barnes, 890 F.2d 545, 549 (1st Cir. 1989)) (discussing constructive possession in the context of both drug offenses and § 922(g)(1)). Thus, the record need show only that the evidence was sufficient to permit a reasonable jury to find beyond a reasonable doubt that Padilla exercised dominion and control "over the area" in which the contraband was found, as a jury may infer from such a finding of constructive possession that he knowingly possessed the contraband if circumstances would make it reasonable for a jury to do so. Id.

The evidence in this case more than sufficed to permit a jury to reasonably find as much. To begin with, the jury learned

---

was sufficient to convict him under § 922(g)(1), we need not address the evidence of the additional ammunition.

that Padilla had admitted in an interview with federal agents that he was an owner of the house in which the ammunition and marijuana were found, that he had made payments on the mortgage for the house, and that he had installed four surveillance cameras at the house in order to deter break-ins and vandalism. Moreover, a federal agent testified that she conducted drive-by surveillance of the house ten days before the search of the house, and that Padilla was standing outside the house as she drove by it.

The jury further learned that Padilla admitted in the interview with federal agents that he frequented the house during the daytime and that he sometimes slept at the house overnight. In addition, the government's evidence sufficed to show that the bedroom in which the ammunition and the marijuana were found was in a more organized and clean condition than the rest of the house, from which a jury could have reasonably inferred that Padilla slept in that bedroom when he stayed overnight at the house. See United States v. Matthews, 498 F.3d 25, 31 (1st Cir. 2007) (stating that a jury is "entitled to rely on plausible inferences" from circumstantial evidence). And, as Padilla concedes, the contraband was found in that bedroom together with personal items that indisputably belonged to Padilla, including: photo identification cards; receipts in his name from the previous year; old correspondence addressed to him; and mannequins, decorations,

and toy guns that Padilla admitted were his for the purpose of making movies.

In the face of this evidence, Padilla nevertheless contends that the evidence was insufficient to prove that he knowingly possessed the contraband. He points out that there was no evidence of his fingerprints on the contraband and that the house was "unkempt, disorganized and full of items." But neither of those facts suffices to show that the jury was compelled to find in his favor regarding whether he knew the contraband was in the bedroom, given the government's ample evidence of his dominion and control over that area. In particular, Padilla acknowledges that the evidence showed that the bedroom was relatively "more organized" than the rest of the house, and that the contraband was found in that bedroom "with items belonging to [Padilla]." A jury could reasonably infer from those facts that Padilla exercised dominion and control over the area where the contraband was found. See United States v. Smith, 680 F.2d 255, 259 (1st Cir. 1982) ("[I]f the evidence can be construed in various reasonable alternatives, the jury is entitled to freely choose from among them."). And the jury was then entitled to infer knowledge of the contraband from that evidence of constructive possession, given that such an inference was reasonable under the circumstances, even if there was no evidence of actual possession, such as the type of fingerprint evidence that Padilla demands.

- 8 -

Padilla also contends that the evidence at trial was too slight because it did not indicate when he inherited his ownership share in the house, when he began "frequenting" the house, or when he stored his personal items in the bedroom inside the house. But, there is no dispute that those events occurred prior to when the contraband was found. And given, for example, the relatively recent dates of the receipts, the comparatively organized and clean condition of the bedroom, and the testimony that Padilla was seen outside the house ten days before the search, a jury could have reasonably found that his dominion and control over the area where the contraband was found continued up to the time of the search.

We therefore conclude that the government's evidence sufficed to prove that Padilla constructively possessed the ammunition and the marijuana found in the bedroom of the house, from which the jury was entitled to infer that Padilla knowingly possessed the contraband, as that inference was reasonable in these circumstances. We thus affirm the denial of his motion for acquittal.

## III.

Padilla next contends in the alternative that, even if the evidence against him was sufficient, both his convictions must be vacated due to various alleged errors in the proceedings below. We disagree.

- 9 -

## A.

Padilla's first argument on this score is that he was "forced" into representing himself pro se in violation of his Sixth Amendment right to counsel because, in his view, he was not given a viable alternative to proceed with effective counsel. Before addressing the merits of this argument, some additional background is needed for context.

As explained above, the trial was originally set to begin on August 11, 2015. One week before then, Padilla moved for new counsel on the ground that he did not trust his two court-appointed attorneys or agree with their case strategy. At a subsequent hearing on August 7, 2015, the District Court offered Padilla a choice to proceed with a different court-appointed attorney whom Padilla preferred, Carlos Vázquez, or, on Padilla's own suggestion, to represent himself pro se with Vázquez's assistance as standby counsel. In either case, the District Court said it would grant Vázquez only twenty days to prepare, which ultimately amounted to a fifteen-day continuance.[3] The District Court asked Padilla which option he preferred, and Padilla responded that he preferred to represent himself with Vázquez as standby counsel.

_____

[3] The fifteen-day continuance of the trial actually meant that Vázquez was ultimately given nineteen, rather than twenty, days to prepare. Because neither party raises this point, it has no bearing on our analysis.

The District Court then proceeded with a lengthy colloquy to ensure both that Padilla understood his constitutional right to representation and that he was voluntarily waiving it.

Padilla's decision to waive his constitutional right to counsel must have been made "knowingly, voluntarily and intelligently." United States v. Benefield, 942 F.2d 60, 65 (1st Cir. 1991) (citing United States v. Campbell, 874 F.2d 838, 845-46 (1st Cir. 1989)). Padilla contends, however, that he was not actually given an option to be represented by effective counsel because a longer continuance than the one the District Court granted was needed in order for Vázquez to have represented him effectively as full -- rather than merely standby -- counsel. Padilla thus contends that, absent a longer continuance, he was forced to make a Hobson's choice, by which his only real option was to proceed pro se, as the only other counsel available to him, besides Vázquez, were the two attorneys who he contends could not represent him effectively. Thus, in Padilla's view, his waiver of his constitutional right to representation was not voluntary.

However, a premise of Padilla's challenge to the effectiveness of his waiver -- namely, that the continuance was too brief to permit Vázquez to provide constitutionally adequate representation as full counsel and thus that Padilla was not actually offered an option of choosing an effective counsel -- is

- 11 -

not supported by the record.[4]  In determining how long to continue the trial, the District Court reasoned that it was not a "very complicated" case and that Vázquez would have the benefit of the preparation done by Padilla's previous two attorneys and their two investigators.  At the hearing, Vázquez did initially tell the District Court, with respect to the time that he needed to prepare as full counsel, that he was "thinking in terms of a month to two months."  However, when the District Court told Vázquez that one to two months was not an option and that he would have only twenty days if Padilla elected to use him as full counsel, Vázquez said "okay."

On appeal, Padilla does not dispute that the District Court had discretion to determine how long of a continuance to grant, even if that decision potentially implicated the constitutional right to counsel.  See United States v. Zimny, 873 F.3d 38, 52 & n.17 (1st Cir. 2017).  Moreover, it is clear that, in order to establish that not granting Padilla a longer continuance erroneously deprived him of his right to counsel, Padilla must show "that the denial amounts to 'an unreasoning and

_____

[4] Because we conclude that Padilla had a real option to be represented effectively by Vázquez as full counsel, we need not address his other implicit premise that his original two attorneys could not have represented him effectively.  We note, too, that Padilla has not identified any other ground for concluding that his waiver of his right to counsel was ineffective.

arbitrary insistence upon expeditiousness in the face of a justifiable request for delay.'" Id. at 53 (quoting United States v. Maldonado, 708 F.3d 38, 42 (1st Cir. 2013)).[5] Padilla offers no persuasive argument, however, as to why, on this record, the District Court was not entitled to determine that no more than twenty days was needed for Vázquez to prepare as full counsel.

In this regard, we see no error in the District Court's determination that this was not a "very complicated" case. After all, the only genuinely disputed issue at the trial was whether Padilla actually or constructively possessed the contraband found in the house, and there were relatively few witnesses and exhibits. See United States v. Rodríguez-Durán, 507 F.3d 749, 767 (1st Cir. 2007) (finding no abuse of discretion in denying continuance in part because "the factual circumstances were not particularly complicated" where charges for drug possession with intent to distribute "stemmed from a single episode with a fixed cast of participants").[6]

---

[5] Because Padilla has not made this showing, we need not decide whether Padilla would also have to show prejudice in this context, a question we recently reserved in Zimny, 873 F.3d at 52-53.

[6] The District Court also pointed out that Vázquez would benefit from the preparation already done by Padilla's two previous attorneys and their two investigators. See United States v. Hurley, 63 F.3d 1, 16 (1st Cir. 1995) (reasoning that a denial of a continuance was not an abuse of discretion in part because counsel benefitted from the work of co-defendants' counsel who had longer time to prepare). And, although Padilla states that he

- 13 -

Consistent with this conclusion, we observe that Vázquez himself responded by saying "okay" when informed of the continuance that would be allowed, without indicating he would need more time in order to provide effective representation on that schedule. Cf. Zimny, 873 F.3d at 55 (noting that a request for a continuance should be made "in clear, unmistakable terms").[7]  And we observe as well that Padilla does not point to any particular reason why longer than twenty days was in fact needed, such as by identifying further investigation that the defense would have needed more time to complete.[8]  See United States v. Williams, 630 F.3d 44, 48 (1st Cir. 2010) (finding no abuse of discretion in denying continuance, which had been requested on the basis of an assertion that the record was voluminous, given in part that "no specific explanation ha[d] been provided as to why those particular materials justified additional time").

---

distrusted those attorneys and disagreed with their case strategy, he does not contend that the work they and their investigators performed on his case could not permissibly be considered by the District Court in determining the duration of the continuance.

[7] We note that, by way of contrast, Vázquez felt comfortable telling the District Court "no" when the District Court asked him if he could be ready as full counsel within two days or one week from when trial was originally scheduled to begin.

[8] The only investigative work that Padilla references on appeal was tracking down his father's firearms licenses "that were critical to his defense."  But, as Padilla acknowledges, those licenses were ultimately admitted into evidence despite the brief continuance.

For these reasons, we conclude that it was within the District Court's discretion to decide not to grant a longer continuance.  We thus disagree with Padilla that his decision to instead proceed pro se with standby counsel was a Hobson's choice.  In consequence, a premise for Padilla's challenge to the effectiveness of his waiver of his right to counsel -- that he had no option of choosing an effective counsel because the continuance was too brief -- is mistaken.  We thus see no basis for finding merit in Padilla's contention that his waiver of his right to counsel was ineffective.

**B.**

Padilla next contends that his convictions must be vacated on the ground that the District Court erred by not advising him that he could testify at his trial in narrative form and thus without anyone asking him questions.  And he contends that he was thereby prejudiced, because he was not aware that he could have testified notwithstanding that he was proceeding pro se.

Padilla asserts that the standard of review is de novo, but the government suggests that our review is for only plain error because Padilla did not raise below his claim that the District Court should have advised him that he could testify in narrative form.  However, because this type of claim "lies in . . . ignorance of the law," at least one other circuit has held that whether it was error not to advise a defendant of the option to testify in

- 15 -

narrative form is reviewed de novo notwithstanding that the defendant did not raise a specific objection below. See United States v. Ly, 646 F.3d 1307, 1312 & n.5 (11th Cir. 2011). For present purposes, we may assume that our review is de novo, because even under that more favorable standard of review, Padilla's challenge fails.

Padilla asserts in his appellate brief that, had he been advised by the District Court that he could testify in narrative form, "[h]is testimony would have filled in some of the areas that were left out by the government's witnesses." However, Padilla does not actually tell us what his testimony would have been, so we have no basis to conclude that his testimony would have had any effect on the verdict. But we need not decide whether the alleged constitutional error here was harmless or whether this type of error is even subject to harmless error review (a question neither party briefed), see Weaver v. Massachusetts, 137 S. Ct. 1899, 1907-08 (2017), because we see no error.

A district court generally has no duty to apprise a criminal defendant of the right to testify or to secure an explicit waiver of that right, as the responsibility to advise a defendant of the right to testify "rests with his lawyer." Rosenthal v. O'Brien, 713 F.3d 676, 687 (1st Cir. 2013) (citing Siciliano v. Vose, 834 F.2d 29, 30 (1st Cir. 1987)). Padilla proposes, however, that when a defendant proceeds without a lawyer, it is "incumbent

- 16 -

upon the Court to fulfill this duty," at least where it becomes manifest that the pro se defendant does not understand that he can testify without anyone asking him questions.

But this argument fails because Padilla did proceed with standby counsel -- whom the District Court described to Padilla as his resource on federal law and procedure -- who could have explained to Padilla that he could testify in narrative form. Indeed, "the wisdom of the trial judge" in appointing standby counsel lies in the fact that the pro se defendant will therefore have counsel available "to perform all the services a trained advocate would perform ordinarily," including "examination . . . of witnesses." Mayberry v. Pennsylvania, 400 U.S. 455, 467-68 (1971) (Burger, C.J., concurring). Thus, we fail to see how it was manifest that Padilla would have needed the District Court to apprise him of his right to testify in narrative form.

Padilla does point to an Eleventh Circuit decision, Ly, 646 F.3d 1307, which held that the district court erred by not correcting a pro se defendant's "obvious" misunderstanding of his option to testify in narrative form. Id. at 1317. But that case is quite different from this one.

In Ly, during a colloquy that the district court had initiated regarding the pro se defendant's decision not to testify, the defendant repeatedly told the district court that the reason he was not testifying was that "I don't have counsel to ask me

- 17 -

questions." Id. at 1311-12. Padilla has not persuasively identified any statement, let alone one from a colloquy over his right to testify, that would have put the District Court on similar notice that he was not aware that he could testify in narrative form. Padilla certainly never told the District Court that the reason he was not testifying was that he did not have counsel to ask him questions. And, of course, he did have standby counsel who could have asked him questions. We thus conclude that the District Court did not err on this score.

## c.

Padilla also contends that his convictions should be vacated in light of several statements made by the prosecutor at trial that Padilla alleges were improper. Padilla did not object to any of the statements that he now challenges on appeal. Nor did Padilla's standby counsel object to the statements on Padilla's behalf, even though the standby counsel did make other objections during the trial. Accordingly, as Padilla concedes, our review is only for plain error.

To show plain error, Padilla must show: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Madsen, 809 F.3d 712,

717 (1st Cir. 2016) (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).  Padilla has not made such a showing.

**1.**

To begin with, Padilla points to the prosecutor's references during opening arguments to the house where the contraband was found as Padilla's "residence."[9]  Padilla contends that these references improperly prejudiced the jury because whether the house was in fact his residence was a disputed issue. "Ideally, to preclude any argument of error, the prosecutor might have used the locution that 'the evidence will show' that" the house was Padilla's residence.  United States v. Capelton, 350 F.3d 231, 237-38 (1st Cir. 2003).  But, even assuming a clear or obvious error, Padilla fails to show how the references affected his substantial rights by prejudicing the jury and resulted in a miscarriage of justice.

In fact, we have previously held that it was not a manifest abuse of discretion to deny a new trial -- a lower standard than plain error -- in a case in which the prosecutor repeatedly referred to each defendant who was charged with drug

---

[9] Padilla directs our attention to nineteen references during the trial to the house as Padilla's "residence."  However, the majority of the statements that he identifies were in fact made by government witnesses, not the prosecutor.  The only references by the prosecutor to the house as Padilla's "residence" that Padilla identifies were made during the opening arguments.

- 19 -

offenses as a "drug dealer" in the opening arguments. Id. at 238. We reasoned that the references did not prejudice the jury because (1) the district court had cautioned the jury before the opening arguments that the counsel's words were not evidence and (2) the government later introduced "substantial" evidence that the defendants were drug dealers. Id.

Likewise, here, the District Court instructed the jury prior to the government's opening argument that what the prosecutor was going to say was not evidence. And the government then introduced substantial evidence from which a jury could reasonably infer that the house was Padilla's residence, including his admissions during an interview with federal agents that he owned and frequented the house, the testimony that he was surveilled outside the house, and the evidence that his personal items were found inside the house. Nor does Padilla develop any argument otherwise.

**2.**

Moving on to the closing arguments, Padilla points to certain statements that the prosecutor made during the rebuttal portion with respect to Padilla's defense theory, presented during his own closing argument, that the ammunition found in the house had belonged to his father and had remained in the house without Padilla's knowledge since his father's death. In this regard, Padilla contends that it was improper for the prosecutor to point

- 20 -

out that some of the caliber sizes of the firearms listed in his father's firearm licenses "did not match" the caliber sizes of the ammunition found in the house, given that the government did not introduce expert testimony on this point.

The problem with this contention is that evidence of the caliber sizes of the father's licensed firearms and the caliber sizes of the ammunition in the house were in the record. Thus, we do not see how it was improper -- let alone clearly improper -- for the prosecutor to comment on an inference that the jury might draw from the fact that the caliber sizes were different. See United States v. Smith, 982 F.2d 681, 683 (1st Cir. 1993) (explaining that "inferences the jury might draw from the evidence" are "a proper subject of comment by the prosecutor" in closing arguments).

Padilla also challenges the prosecutor's reference during the rebuttal to the fact that no firearms were found inside the house, from which the prosecutor inferred that any firearms belonging to the father had been removed. The prosecutor then suggested to the jury that it would be implausible that any ammunition belonging to Padilla's father would have remained in the house after the father's firearms were removed.

Padilla asserts that this suggestion was improper. However, "a prosecutor has a right to comment on the plausibility of the defense theory." United States v. Henderson, 320 F.3d 92, 106 (1st Cir. 2003) (citing United States v. Garcia, 818 F.2d 136,

- 21 -

143 (1st Cir. 1987)).  And Padilla makes no argument as to why the prosecutor's remark clearly exceeded the scope of that right.

**3.**

Finally, Padilla challenges the following statement made by the prosecutor during the rebuttal portion of closing arguments:

> This case is about an ex PRPD officer, convicted felon, person that has law enforcement background.  This is not a case about a grandmother, naive, that had never seen any type of narcotics, or was never confronted and had no participation in narcotics.  This is not a case about an old grandfather, 85 years old, who had no law enforcement background, had never seen a gun before, had never seen a bullet before, and would not be able to identify them.

Padilla contends that the fact that he was a former police officer did not bear on his knowledge about narcotics and that the implied reference to his "participation in narcotics" improperly "insinuated illegal usage or activity."  He also contends that the reference to him as "a convicted felon" "invited the jury to focus on his bad character rather than on the evidence."

The government responds that the prosecutor properly invoked Padilla's former profession in order to rebut Padilla's theory that he was ignorant of the nature of the contraband found in the house.  The government also counters that the reference to Padilla's status as a convicted felon -- which is an element of the § 922(g)(1) charge -- was proper because it rebutted Padilla's

- 22 -

claim to the jury in his closing argument that the § 922(g)(1) charge against him "could happen to anybody" who inherits a house from someone with a weapons permit.

Even if Padilla is right that these comments were improper, he has failed to make any developed argument as to how the prosecutor's references to him as a former police officer and convicted felon affected his substantial rights and resulted in a miscarriage of justice. And, in any event, as we explained in Part II, while Padilla challenges only the sufficiency of the government's evidence with respect to his knowledge that the contraband was in the bedroom, the government offered a wealth of evidence on that score. Padilla has thus failed to show how these references made it reasonably probable that, had they not been made, the outcome at trial would have been different. See United States v. Latorre-Cacho, 874 F.3d 299, 303 (1st Cir. 2017) ("[T]he third prong of the plain error standard . . . requires the defendant to show . . . that it is reasonably probable that the clear and obvious error affected the result of the proceedings."). Accordingly he has failed to satisfy the plain error standard that applies here.

## IV.

Finally, Padilla challenges two aspects of his sentence. We reject his first challenge but, in accord with the government's own view, grant relief with respect to his second challenge.

- 23 -

To begin with, Padilla objects to a special condition of his supervised release that he "shall participate in an approved mental health treatment program for evaluation and/or treatment services determination." The condition specifies that, "[i]f deemed necessary, the treatment will be arranged by the [probation] officer in consultation with the treatment provider; the modality, duration and intensity o[f] treatment will be based on the risks and needs identified." The presentence report recommended this condition. Padilla objected to the condition at the sentencing hearing, but the District Court concluded, in light of his experiences interacting with Padilla over the course of the case, that "this is a good condition for him."

"We review conditions of supervised release for abuse of discretion." United States v. DaSilva, 844 F.3d 8, 11 (1st Cir. 2016) (quoting United States v. Del Valle-Cruz, 785 F.3d 48, 58 (1st Cir. 2015)). The District Court has "broad discretion" to impose conditions of release provided they are "reasonably related," as pertinent here, to the provision of rehabilitative treatment for the defendant. United States v. Rivera-López, 736 F.3d 633, 635 (1st Cir. 2013); see also U.S. Sentencing Guidelines Manual § 5D1.3(d)(5) (U.S. Sentencing Comm'n 2015) (release may be conditioned on participation in a mental health program "[i]f the

court has reason to believe that the defendant is in need of psychological or psychiatric treatment").

Padilla contends that the District Court abused its discretion in imposing the mental health counseling condition because his court-ordered psychiatric evaluation did not diagnose him with a mental illness. However, the government points out that the psychiatric evaluation concluded that Padilla did exhibit "features" of a particular mental illness -- a point Padilla does not dispute. See United States v. Perazza-Mercado 553 F.3d 65, 75 (1st Cir. 2009) (noting, with respect to a court's imposition of a condition of supervised release, that "a court's reasoning can often be inferred after an examination of the record" (internal quotation marks omitted)). The condition of supervised release at issue requires only that Padilla be evaluated for treatment services. Thus, if treatment services are not "deemed necessary," then under the plain terms of the condition, no treatment will be arranged. Padilla identifies no case law indicating that a mental health counseling condition like this one can be imposed only if the defendant is diagnosed with a mental illness. Nor are we aware of any such authority. Accordingly, we conclude that the District Court did not abuse its discretion by including this condition of supervised release.

**B.**

Padilla also challenges the District Court's order of forfeiture of "[a]ny and all materials or property used or intended to be used in the possession, receipt, distribution or transportation of child pornography, pursuant to Title 18, USC Section 2253." The government agrees with Padilla that this order of forfeiture was an error and should be excised from the written judgment.

Forfeiture under criminal statutes like 18 U.S.C. § 2253 is "an element of the sentence imposed following conviction." Libretti v. United States, 516 U.S. 29, 38-39 (1995) (emphasis omitted). Accordingly, an order of criminal forfeiture must be supported by a factual foundation in the record. See id. at 48. Nothing in the record here, however, has any discernible connection to child pornography. Accordingly, we agree with the parties that this order of forfeiture should be struck from the written judgment.

**V.**

We therefore **remand** for the limited purpose of striking the child pornography forfeiture order, but we **affirm** the rest of the District Court's judgment.